## WILLOUGHBY *v.* STATE.

(Division A.   June 10, 1929.)

[122 So. 757.   No. 27811.]

*E. W. Patrick,* of Jackson and *Sam McGuire,* of Mc-Comb, for appellant.

*C. O. Jaap,* of Jackson, for appellant.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

Argued orally by *E. W. Patrick* and *J. Sam McGuire,* for appellant, and by *Rufus Creekmore,* Assistant Attorney-General, for appellee.

McGOWEN, J., delivered the opinion of the court.

The appellant, W. V. Willoughby, was convicted of the crime of robbery by putting J. W. Cox in fear and stealing from the Bank of Madison the sum of one thousand four hundred sixty-nine dollars and thirty-five cents, on a change of venue from Madison to Hinds county, and was sentenced to serve a term of ten years in the state penitentiary, from which sentence this appeal is prosecuted.

The record is lengthy, and no practical good would come of incumbering this opinion with a detailed statement of the facts contained in the record.

On the morning of April 20, 1928, the Bank of Madison was robbed, and the amount mentioned above was stolen from it and carried away by the robber. The cashier of the bank, Mr. Cox, was forced, at the point of a pistol, to hold up his hands and submit to the robbery of the coffers of the bank. The defendant, the appellant, Willoughby, was positively identified as the person committing the robbery by Messrs. Cox, Mixon, and Edmund Taylor. There were also witnesses in the vil-. lage of Madison on this occasion who were positive that Willoughby was not the man who was seen to enter the bank and leave the town driving a blue Hudson coach.

The appellant offered evidence that on this particular morning he was in the office of his father, having driven with his father and mother to the office of his father in the Merchants' Bank & Trust Company building, where he remained until about eleven o'clock, going from there in the company of a friend to the Crescent pool room, where he played pool until twelve o'clock, and that his first knowledge of the robbery of this bank was when he, with his friend, read the account thereof in the Jackson Daily News.

It appears from this record that on the night of Tuesday, May 29, 1928, some one knocked on the door of the home of J. W. Cox, cashier of the bank. Upon opening the door, Cox was confronted by two men with drawn pistols, one of whom he identified as Willoughby, and the same man, according to his statement, who had robbed the bank theretofore. Willoughby secured from Cox the combination of the safe, leaving him and Mrs. Cox under the guard of his associate. He returned to the home of Cox after having been gone for some time and stated that he could not open the safe, and, with his

gun drawn forced Cox to go to the bank and open the safe, whereupon the bank was again robbed of a considerable sum. Cox kept in the closet of his home a bottle containing some wine, and another containing some whisky. Mrs. Cox fainted upon the entrance of these two men into her home, and when Mr. Cox started toward the closet to get some wine to revive and stimulate her, the appellant, Willoughby, ordered him to stay away from the closet,. reaching for it himself instead, and in doing so placed his hands upon the whisky bottle as well as the wine bottle in order to administer a stimulant to Mrs. Cox. The identification of Willoughby as one of the men present was positive and complete according to the evidence of Mr. and Mrs. Cox.

The two bottles were turned over to the representative of a detective agency and the impression of the finger prints on both the wine and whisky bottles was developed therefrom. A photograph of the impression of the finger prints on the neck of the wine bottle was undertaken to be offered in evidence by the appellant, together with the impression of Willoughby's finger prints, which had been taken by the detective agency, for comparison, and the appellant offered to show that the impression of the. finger prints on the neck of the bottle was not that of any one of his ten finger prints. It was further shown that there were other finger prints on this particular bottle capable of being developed which were not developed.

Mr. Cox testified that the particular finger prints on the wine bottle were not his or Mrs. Cox's and so far as he knew no one had touched the bottles except the appellant in this case. He stated, however, that his daughter might have handled the bottles, and, on occasions, a servant. It is not explained in this record what became of the whisky bottle, or the finger prints developed from the impressions thereon, nor of the developments of

the other impressions of finger prints taken from the wine bottle.

The chief of the finger print bureau of the city of New Orleans testified that the finger prints on the neck of the bottle were not those of the appellant.

The court heard all of this evidence out of the presence of the jury, and sustained the state's objection. The appellant offered evidence to show, which, if believed, would be a complete *alibi* on the night of this second robbery. To all practical intents and purposes, the details of both crimes of robbery were gone into by the state and the appellant.

During the course of the trial, the court, over the objection of the appellant, permitted the state to introduce a certain twenty-dollar bill, which had written on the white part of the face of the bill the figures "three hundred and sixty," not originally stamped there, the figures, according to the witness, having been apparently written with a blunt lead pencil. The number of the bill, as stamped by the government, was F-14791291 A. The witness, Cox, was not positive that this was the bill which was in the bank before the second robbery.

The chief of police of the city of Jackson testified that upon a second search of the appellant's dwelling place, which was occupied by the appellant, his wife, his father-in-law, and others, he found a roll of money, in bills, with a string tied around it, underneath the bathtub in the bathroom. The appellant said, when arrested at his home, where he was hiding under the doorstep, that he left five hundred dollars in the drawer of the chifforobe in his room, but that he knew nothing of any money being in the bathroom.

There are many assignments of error, but we shall only notice those which apparently should evoke an expression of opinion from this court.

1. It is urged that the court erred in permitting the state to introduce proof of the robbery of the bank on

the night of May 29, 1928, thereby placing an undue burden upon the appellant, in that he was required to defend himself on two separate, independent, and disconnected charges of robbery. An all-sufficient answer appears from a critical examination of this record, in that the appellant not only did not interpose an objection but assisted the district attorney in bringing out the facts in detail of the second robbery except in one par-. ticular, to which we shall hereafter refer.

We desire to emphasize again that it is necessary to make specific objection and present the point to the lower court in order to take advantage of it here on appeal.

2. It is insisted that the court erred in not permitting the evidence which we have detailed, as to the impression of the finger prints on the neck of the wine bottle in comparison with the impression of the appellant's finger prints, to be admitted in evidence, in order to show that the finger prints on the bottle were not those of the appellant. The evidence of finger print identification has, for a long time, been recognized by the courts of the country as admissible in evidence in order to establish the identity of a party where the comparison of a developed finger print with that of the party alleged to have made it is shown; and such testimony has been received in India, England, and the United States. The courts of the country have yielded to the assertion of science that the finger prints of each individual may, by experts skilled in this science, be differentiated from those of any other person. There are authorities which state that this system of identification is not new, the same having been used in Egypt when the impression of a monarch's thumb was used as his sign manual, that it was adopted by the courts of India, and later recognized by the courts of England. See *People v. Jennings*, 252 Ill. 534, 96 N. E. 1077, 43 L. R. A. (N.

S.) 1206; 8 R. C. L., section 75, p. 183; 16 C. J., section 1550, p. 55.; *Moon* v. *State,* 22 Ariz. 418, 198 P. 288, 16 A. L. R. 362, and notes.

This case, however, differs from the cases reported, so far as we have observed, in that the defendant offers to show that he is not the man, because the finger prints found on the bottle of wine were not made by him, according to the expert testimony offered. The adjudicated cases deal with the opposite of this proposition and approve the affirmative that certain finger prints on a given object may be proven to be the finger prints of the party sought to be connected therewith. In other words, the appellant sought to prove the negative of the proposition; and if his evidence had embraced all the finger prints susceptible and capable of being developed on both of the bottles, and had been brought into court, then there could be no good reason for the court not receiving such testimony. In this case, however, it is shown that the man who touched the wine bottle also touched the whisky bottle, and it is not shown that the daughter or servant had not handled the bottle before it was touched on the night of the robbery on May 29, 1928; and, further, it does not negative the proposition to show only one finger print, when the appellant's evidence shows that there were other finger prints upon the bottle which could have been developed and brought into court by the experts who made the examination. We are of the opinion that the lack of these necessary links in the chain of evidence render it inadmissible here.

3. It is insisted that the twenty-dollar bill, found by the chief of police in the bathroom of the dwelling occupied by the appellant and others, and to same extent identified by the cashier of the bank as having been in the bank immediately before the second robbery, should not have been introduced in evidence, nor the evidence submitted therewith as tending to show that the appel-

lant committed a second crime for which he was not on trial. If we concede that the record shows that the twenty-dollar bill in question did not pass over the counter of the bank in due course of business and that it was sufficiently identified for the jury to pass upon whether or not it was the same bill, and if we should say that because it was found in a dwelling occupied by the appellant and several others that there was sufficient identification to make this bill a circumstance to connect the defendant with the second robbery, then under what theory was this evidence competent?

The general rule as adopted by our own court is that evidence of other crimes than the one for which the accused is being tried is inadmissible; and, if it be doubtful whether such evidence falls within any of the exceptions to the rule, it should be excluded. The one exception necessary for the court to consider, as urged by the attorney-general and as adopted by the trial court, is that the evidence to identify the accused as the person who committed the robbery is not to be excluded simply because such evidence proves, or tends to prove, that he was guilty of another and independent crime. See 16 C. J., p. 589; *King* v. *State,* 66 Miss. 502, 6 So. 188; *Dabney* v. *State,* 82 Miss. 252, 33 So. 973; *Collier* v. *State,* 106 Miss. 613, 64 So. 373; *Hurd* v. *State,* 137 Miss. 178, 102 So. 293; *Parkinson* v. *State,* 145 Miss. 237, 110 So. 513.

With the concession we have made as to the identity of this particular bill of money, was it competent to introduce it in evidence against the defendant, over his objection, as tending to establish the first robbery? We do not think so. There is no contention in the record that the particular bill in question was in the bank, or disappeared from the bank about the time of the first robbery, for which the defendant was on trial. The state's identification of the defendant was complete; so

was the *alibi* of the defendant, if the jury would believe it. The twenty-dollar bill in question had nothing to do with the first robbery, or any connection therewith. The admission of the twenty-dollar bill, together with the circumstance under which it was found, was very damaging to the appellant, in that it tended to show that the defendant had committed the second crime. In other words, Cox, the cashier, identified the appellant as the man who robbed his bank on the first occasion, and then as the man who robbed it on the second occasion, and then, not for the purpose of identification, but for corroboration of his testimony as to the identity of the accused, was this twenty-dollar bill offered. It is too far removed; and, at best, if it were said that it in some way tended to identify the appellant, it would simply be corroborative of the identification, and not the identification itself. The evidence was damaging to the defendant and should not have been admitted. It did not tend, in our judgment, to establish the identity of the party who committed the first crime. It was not otherwise competent in the trial of that case and had no bearing upon the issue being tried as to whether the appellant robbed the bank on the 20th day of April, 1928.

The language of this court in *Raines* v. *State,* 81 Miss. 489, 33 So. 19, should be repeated here with emphasis: "Evidence should be confined to the issue joined, and in criminal cases it should be directed exclusively to the transactions of which the indictment is predicated."

The court should have excluded this marked bill and all the evidence in connection therewith; and for the erroneous admission of this evidence, this case must be reversed and remanded for another trial.

*Reversed and remanded.*