RILEY *v.* STATE

No. 43269 November 22, 1965 180 So. 2d 321

*Harold W. Davidson,* Carthage, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Brady, Tom P., J.

The appellant, Ollie Riley, was tried and convicted in the Circuit Court of Leake County, Mississippi on an indictment under Chapter 281, Mississippi Laws of 1958, Mississippi Code Annotated section 2412.5, supplement 1964, commonly known as the ''Peeping Tom Statute.'' Appellant was sentenced to a term of two years in the Mississippi State Penitentiary and prosecutes this appeal from that sentence.

The relevant facts in the case are as follows. On the night of May 4, 1963, at approximately 10:30 P.M., the Brantley family, consisting of Mr. Max Brantley, his wife, Mrs. Donna Brantley, four daughters and a son, had retired for the night. A bird dog chained in the yard began to bark and Mr. Brantley arose to investigate. The record discloses that on two other occasions the Brantley household had been disturbed by a Negro who had peeped into the windows of their home three weeks before, and three months before, the night in question.

The record discloses that Mr. Brantley seized his pistol and ran toward the front door. As he did so, Mrs. Brantley looked out their bedroom window and saw appellant standing with his face in the window. She called out to her husband: ''Here he is, at the window.'' Mr. Brantley ran out the front door and saw the appellant at the southeast corner of his house. When Mr. Brantley saw him, appellant started to run from the house, being then approximately six feet from the window. He told appellant to stop or he would kill him, and the appellant promptly stopped. Mr. Brantley caught hold of him and forced him to sit on the porch. Appellant stated to Mr. Brantley that he had parked his car at the foot of a hill on old Highway 61 on the side of Mr. Brantley's house; that he had gotten out of the car and walked down to the creek bridge, walked

across, walked back across Mr. Syl Quick's pasture, and up to Mr. Brantley's home.

Mr. Brantley testified that he could not tell that the appellant had been drinking at all, nor could he tell that there was anything abnormal or wrong with appellant's condition except that he was scared. Mr. Brantley testified that appellant admitted to him that he had made the tracks in the snow around the windows of Mr. Brantley's house approximately three months before. These tracks went from window to window of the house. The record indicates that appellant's car was parked some 200 yards from the side of Mr. Brantley's home.

Mr. Brantley further testified that appellant admitted he had brought a five gallon can up to the bathroom window and peeped into Mr. Brantley's bathroom approximately three weeks before the night in question.

Each of these former events had taken place on a Saturday night, as did the event on the night in question, May 4, 1963. Mr. Brantley's twin daughters, Maxine and Braxine, age twelve, were permitted to testify over appellant's objection.

Braxine Brantley testified that it was snowing on the night she first saw appellant; that when she turned on the porch light and looked out the door to see if it was still snowing, she saw appellant outside peeping in the window of the living room by the front porch, and that he fled.

Maxine testified that three weeks before May 4, 1963, at approximately 10:30 P.M., she went to the bathroom and saw appellant looking in the bathroom window; that she screamed and he fled.

While both of these girls knew and recognized the appellant, they were not able at the time to recall his name. The record discloses that appellant lives approximately a half mile from Mr. Max Brantley's home. No indictments were sought against appellant for these two former alleged offenses.

Mrs. Donna Brantley, wife of Max Brantley, Janice Brantley, a seventeen-year-old daughter, David Brantley, a son, and Maxine and Braxine Brantley, twin daughters, testified in substance to what their father had testified with reference to what transpired on the night of May 4, 1963. Janice Brantley also testified that she heard the appellant tell her father that he was drunk or had been drinking, and that he lost his head, and lost his way; that he had to go off and leave his car because he couldn't drive it and that he was just on his way home. This corroborates the statements made by appellant.

The record discloses that, after Mr. Max Brantley stopped and held the appellant, he sent his son, David, to get his father-in-law, Mr. Hal Hamlin, and a neighbor, Mr. Sylvester Quick, who came to Mr. Brantley's home. Mr. Tommy Roberts, city policeman of Carthage, Mississippi, accompanied by Mr. Clyde Greer, also came, and Mr. Tommy Roberts placed the appellant under arrest and took him off to jail.

Mr. and Mrs. Hal Hamlin, the father and step-mother of Mrs. Donna Brantley, both testified. Mr. Hamlin testified that he did not believe the appellant was drunk on the night in question; that he heard him talk and that he made good sense, as good as he could have under the circumstances. Mrs. Hamlin stated that she could not tell whether or not he was drunk.

Mr. Tommy Roberts testified that the appellant was not drunk; that he could smell liquor on appellant, but he wouldn't say that he was drunk because he walked good and he "wasn't thick tongued or anything like that." He admitted that the appellant stated he had just gotten lost and that was the reason he was there.

Mr. Sylvester Quick, who was first to arrive at the scene after appellant was caught, testified also that appellant was not drunk but that he was drinking; that appellant did not act as though he were scared; and

that appellant stated, as an explanation for why he was there, that he had gotten lost.

Mr. Clyde Geer testified that he accompanied Mr. Tommy Roberts, and that the appellant was not drunk; that he could "smell a little on him," but he was not drunk.

The appellant, Ollie Riley, took the stand and testified in his own behalf. He denied every statement which had been made by Mr. Brantley and his daughters with reference to peeping in the windows on the night of May 4th. He testified that he had taken some drinks, with a complete stranger, of something that "tasted like sweetened water," which hypnotized him; that he was completely lost; that his mind "would be this minute one place, and the next minute be another," and that he did not know where he was or why he had gone to the Brantley home. He testified that his "membrance" came and went, and that he did not ever look into the windows of the Brantley home. He testified that he was not drunk but that he had no mind and did not know where he was; that his memory did not come back to him until Mr. Brantley grabbed him by the arm and he looked into Mr. Brantley's pistol barrel.

The appellant assigns four errors, but his brief treats the errors assigned as if they fall within two categories. The first category is that the court erred in permitting testimony, over objections of appellant, regarding alleged offenses of a similar nature to the crime with which appellant was charged, attempting to connect appellant thereto, and in refusing to grant a motion for a mistrial and a new trial because thereof. The second category is that the court erred in refusing to grant appellant's motion for a directed verdict and in refusing to grant a new trial because the evidence failed to show the appellant guilty as charged, and the verdict was contrary to the overwhelming weight of the evidence.

■■ Considering this second category of errors assigned, an objective review of this record convinces us

that the appellant's motion for a directed verdict was not well taken for the reason that the proof is abundant and, if believed by the jury, is amply sufficient to merit the conviction of this appellant. For the same reason that the evidence is sufficient to support the verdict of guilty, the verdict of the jury cannot be contrary to the overwhelming weight of the evidence. ██ ██ It follows, therefore, that on these issues and for these reasons, the court did not commit error in not granting a new trial, the proof in this case being sufficient and of such character as to justify the jury in finding the appellant guilty.

The basic question before this Court upon review is whether or not the lower court committed error in permitting the State, over the objections of appellant, to show that appellant on two other recent occasions had committed two similar offenses to the crime with which he is being charged here. If the court was not in error in permitting this testimony, then obviously the court was not in error when it refused to enter a mistrial at the time this testimony was objected to, and when it refused to grant a new trial because of this testimony after the court had entered its judgment.

██ ██ Addressing ourselves now to whether or not proof of former offenses by the appellant was admissible, it must be noted that appellant correctly states the general rule, that evidence of other crimes perpetrated by appellant are not generally admissible. Many cases are cited by appellant, but appellant's brief indicates that he relies largely upon the following cases: Brown v. State, 224 Miss. 498, 80 So. 2d 761 (1955); Hawkins v. State, 224 Miss. 309, 80 So. 2d 1 (1955); Pegram v. State, 223 Miss. 294, 78 So. 2d 153 (1955); Patton .v. State, 209 Miss. 138, 46 So. 2d 90 (1950); Brooks v. State, 209 Miss. 150, 46 So. 2d 94 (1950); Phillips v. City of Aberdeen, 188 Miss. 837, 196 So. 632 (1940) ; Floyd v. State, 166 Miss. 15, 148 So. 226 (1933);

Willoughby v. State, 154 Miss. 653, 122 So. 757, 63 A.L.R. 1319 (1929). While stating good law, these cases are distinguishable from the case at bar and do not justify the sustaining of appellant's basic contentions.

The appellant stated in his brief:

Of course we realize that the State in this case will argue that there is an exception to the general rule. However, we do not believe that a review of the evidence places it in the category of one of the well recognized exceptions as announced in *Hawkins v. State,* 80 So. 2d 1, 222 Miss. 309, or at least that it is doubtful whether such evidence falls within any of the exceptions and should be excluded under the case of *Willoughby v. State,* 82 Miss. 252, 33 So. 973, and other cases holding to the same principles.

In passing, 82 Miss. 252, 33 So. 973 (1903) is the citation for Dabney v. State. The correct citation for Willoughby v. State is shown above.

Appellant correctly points out in 20 American Jurisprudence *Evidence* section 309 (1939) the general rule regarding the inadmissibility of proof of other crimes or offenses in the trial of a criminal case. The appellant quotes from this section, as follows:

A person, when placed upon trial for the commission of an offense against the criminal laws, is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the indictment against him. It is a well-established common-law rule that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless the other offenses are connected with the offense for which he is on trial. In other words, it is not competent to prove

that the defendant committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the indictment, for ordinarily such proof will not reflect any light upon the special crime with which the defendant stands charged. (20 Am. Jur. at 287-88.)

▮▮ ▮ This general rule was quoted with approval by this Court in the case of Hawkins v. State, *supra.* In that case, however, this Court went on to say that there are several well recognized exceptions to, and limitations on, the general rule, including when such evidence tends directly to establish the particular crime, the motive, the intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, or the identity of the persons charged with the commission of the crime on trial.

▮▮ ▮ The basic issue in this case is actually whether the appellant wandered there in a disoriented condition, as is urged in appellant's brief and as was testified to by appellant, or whether at the time he was caught there by Mr. Brantley he had gone there for the lewd and licentious purpose of peeping into the window of the Brantley home. Mrs. Brantley's testimony that, after retiring, she saw the appellant's face at her bedroom window, is uncontradicted except for appellant's inconsistent testimony. The basic issue therefore resolves around whether or not the motive and intent of the appellant was to trespass upon the property of Max Brantley for the lewd and indecent purpose of peering into the window. Since the motive and intent of appellant is in sharp issue, we hold, under the facts of this case, that proof of identical offenses committed prior to the offense for which the appellant was prosecuted is admissible on the issue of motive and intent. One clear statement in this regard is found in Raines v. State, 81

Miss. 489, 33 So. 19 (1902), in which case this Court
held as follows:

> Evidence of the conduct of the accused on other oc-
> casions, though disconnected from the offense on trial,
> is frequently admitted in cases of conspiracy, uttering
> forged instruments and counterfeit coin, and receiv-
> ing stolen goods, — not, however, for the purpose of
> inducing the jury to believe the accused guilty of the
> crime for which he is on trial, because he had com-
> mitted another similar crime, but for the purpose
> of excluding him from setting up the defense that he
> did the act innocently and without knowledge of its
> guilt. In such cases evidence of other similar offenses
> is admissible, because the act for which the defendant
> is being tried is mostly of an equivocal kind, from
> which *malus animus* is not a necessary presumption;
> and such evidence is allowed in order to show a crimi-

nal intention. . . . (81 Miss. at 497, 33 So. at 20-21.)
This rule is recognized in Mississippi and in other jur-
isdictions, particularly in offenses of this nature, which
are basically a type of sex offense. █ Nevertheless,
trial courts should exercise a high degree of caution in
admitting evidence of similar offenses, and should do
so only when, as in the case at bar, the evidence comes
clearly within the conditions constituting and permitting
the exception, and not under the prohibition of the gen-
eral rule excluding the evidence of other crimes per-
petrated by the accused.

Lee v. State, 244 Miss. 813, 146 So. 2d 736 (1962); Fuqua
v. State, 246 Miss. 191, 145 So. 2d 152 (1962), cert. denied,
372 U. S. 709, 83 Sup. Ct. 1018, 10 L. Ed. 2d 125 (1963),
rehearing denied, 373 U. S. 947, 83 Sup. Ct. 1536, 10
L. Ed. 2d 703 (1963); Hawkins v. State, 224 Miss. 309,
80 So. 2d 1 (1955); Stone v. State, 210 Miss. 218, 49
So. 2d 263 (1950); May v. State, 205 Miss. 295, 38 So.
2d 726 (1949); Strong v. State, 199 Miss. 17, 23 So.
2d 750 (1945); Housley v. State, 198 Miss. 837, 23 So.

2d 749 (1945); Golden v. State, 183 Miss. 289, 184 So. 324 (1938); 20 Am. Jur. *Evidence* secs. 313, 315 n. 19, 340 & nn. 10 & 11 (1939); 22A C.J.S. *Criminal Law* secs. 686, 691 (29) (1961); 1 Underhill, Criminal Evidence secs. 206, 208 (5th ed. 1956). Cf. *Id.* at secs. 789, 808 (5th ed. 1957).

■■■ The recent case of Cain v. State, 253 Miss. 368, 175 So. 2d 638 (1965), has particular application to the case at bar. The Cain case involved three men charged with malicious mischief, and specifically with hurling objects at another man's house on several occasions. As in the case at bar, the victim was attempting to catch the culprit or culprits and was lying in wait for them. We approved the admissibility of the previous similar acts in the Cain case even though, unlike the case at bar, it could not be shown with any certainty that Cain and his accomplices were guilty of the previous act. We stated in that case that the evidence was admissible to show a common pattern of action whether or not appellants were involved in any prior occurrences, to show motive of appellants, and to explain the otherwise dubious actions of the prosecuting witness.

In conclusion, we find that there is no reversible error in this case and that the guilt of the appellant has been sufficiently established beyond every reasonable doubt. The judgment of the lower court is therefore affirmed.

Affirmed.

*Ethridge, P. J., and Gillespie, Jones and Inzer, JJ.,* concur.