206 So.2d 829 (1968)
Robert Earl HARRIS
v.
STATE of Mississippi.
No. 44470.
Supreme Court of Mississippi.
February 5, 1968.
*830 L. Lackey Rowe, Jr., Jackson, Howard McDonnell, Biloxi, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
JONES, Justice:
In the Circuit Court of Monroe County appellant was convicted under section 2412.5 Mississippi Code 1942 Annotated (Supp. 1966). This section was adopted by the Legislature in 1958 and appears as chapter 281 of Mississippi Laws 1958. The appellant was sentenced to serve three years in the state penitentiary with one and one-half years suspended pending good behavior.
Errors are assigned (1) in the refusal to dismiss the indictment because appellant was alleged to have been denied a preliminary hearing, (2) in the refusal to exclude certain testimony relating to the identification of appellant by Mrs. Laura Watson, (3) in the refusal to hold that the above section as applied was unconstitutional and (4) in not granting a new trial inasmuch as the verdict was contrary to the great weight of evidence. Error was also assigned in the overruling of appellant's motion to quash the venire because of alleged systematic exclusion of negroes and because of the exclusion by state law of women from the jury.
Mr. L.D. Watson, a resident of Hamilton, Mississippi, in Monroe County, was the father of two children, one of whom was a fifteen-year-old girl. On April 17, 1966, about 8:00 p.m., the family was at home watching television. The fifteen-year-old daughter left the room to take a bath, and Mrs. Watson went to the kitchen to clean up. The house is approximately 200 feet from a road on the front and has another road on one side. The bathtub is on the west side of the bathroom but visible from the window, which is about five feet above ground level. While taking her bath, the daughter heard her mother scream.
When Mrs. Watson had gone to the kitchen, she had turned on the exterior lights to feed the cat and dog on the outside, had stepped out and had observed a man standing on a flowerpot looking in the bathroom window, fifteen or twenty feet distant from her. He was looking through the window with his head tilted to one side. Upon her screaming upon seeing him, he had run. She was able to recognize the person and identified him as the appellant. After the incident, she first inspected the inside of the bathroom and believed the curtain was drawn. To be sure, she then went outside and stood on the flowerpot. She was able to see into the bathroom because the curtain was slightly open; but in order to do so, she had to tilt her head. She positively identified the appellant in the courtroom as the one who had been standing on the flowerpot until she screamed.
Mrs. Watson said that the man had on khaki pants with a belt and a short-sleeved sport shirt of a light color tucked in. The appellant's defense was an alibi supported by two witnesses.
First the appellant contends that it was error to refuse to dismiss the indictment because the appellant had no preliminary hearing. The record shows that the appellant waived such a hearing. The record of preliminary hearing was not introduced before the jury, nor was any alleged statement or plea made by the appellant before the magistrate at such hearing introduced into evidence. There is no evidence of any harm or prejudice against the appellant by the failure to have a preliminary hearing, if there were such failure. It would have had no effect upon the trial in this cause. Harper v. State, 251 Miss. 699, 171 So.2d 129 (1965); In re Woodruff's Petition, 253 Miss. 827, 179 So.2d 268 (1965).
When Mrs. Watson was on the stand she positively identified the appellant as the man she had seen standing on the flowerpot at the window of the bathroom on the night of April 17. On cross-examination, the attorneys for the defendant requested *831 that the jury retire while they questioned Mrs. Watson. While the jury was out, she testified that the next time she saw the appellant was on the 18th. Mrs. Watson stated that on the next day after the incident the appellant was brought to her house by the deputy sheriff. She did not know whether he came voluntarily or not. He was standing there in front of her house when she saw him. Because he was accompanied by the deputy the next day for identification by Mrs. Watson, appellant moved the court to exclude all testimony relating to the identification of the defendant. This motion was overruled by the court. The jury thereafter returned and the trial proceeded. Appellant argues that Mrs. Watson's identification of the appellant before the jury should be excluded because the bringing of the appellant to Mrs. Watson's house the next day afforded opportunity and chance for confusion. We do not think that such an appearance would utterly destroy her testimony. If it would have any effect at all, it would only go to the weight to be given to her testimony.
As to the contention that the statute in question is unconstitutional as applied, we cannot agree. This statute reads as follows:
Any male person who enters upon real property whether the original entry is legal or not, and thereafter prys or peeps through a window or other opening in a dwelling or other building structure for the lewd, licentious and indecent purpose of spying upon the occupants thereof, commonly called a "Peeping Tom," shall be guilty of a felonious trespass; and upon conviction, shall be imprisoned in the state penitentiary not more than five years.
This Court has held that the statute is constitutional. Brown v. State, 244 Miss. 78, 140 So.2d 565 (1962); Riley v. State, 254 Miss. 86, 180 So.2d 321 (1965). The statute provides that act must be done with "lewd, licentious and indecent purpose." The jury was fully instructed on this feature of the case and determined it against the appellant. The following facts are sufficient to support a finding that the act was committed with a lewd, licentious and indecent purpose: the house was some distance from the road, the appellant had climbed upon a flowerpot where he could see into the bathroom, he was tilting his head in order to see into the bathroom, the light was on in the bathroom, the window of the bathroom was five feet above the ground, and while he was peeking in the window the little girl was completely nude in the bathtub. As stated the jury was fully instructed upon this matter.
The appellant also argues that the verdict was contrary to the clear weight of the evidence. With this argument we do not agree.
The appellant further assigns as error the overruling by the court of his motion to quash the venire because of the exclusion of women from jury service. This Court has passed upon this issue in State v. Hall, 187 So.2d 861 (Miss. 1966); Pendergraft v. State, 191 So.2d 830 (Miss. 1966). There is also an interesting commentary by the United States Supreme Court on the right of women to serve upon juries in the case of Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961).
Appellant filed in the lower court a motion to quash the venire on the grounds of (a) the systematic exclusion of Negroes from jury service and (b) exclusion of women. We have heretofore discussed the question to the exclusion of women.
The appellant through his attorney asked for a subpoena duces tecum for the records of the county relative to the jury list and jurors for the ten years preceding the trial. The court by its order limited such subpoena duces tecum to the two years immediately preceding the trial.
Records showed that the total population of the county was 36,500, of which number 25,260 were white and 11,240 *832 were non-white. The total number of whites over 21 years old was 15,459, and the number of non-whites over 21 was 5,249, percentages of 74.7 and 25.3, respectively. Certain lists in the record showed that for the years 1964 through 1966 the percentage of negroes on the submitted jury lists varied at each term of court, ranging from zero to 31 percent. There was an average of 7 percent through this period. These figures and statistics are the only evidence that was before the court, and the court adopted these figures on which to base its opinion. The court was of the opinion that the figures introduced showed that there was no discrimination. The court said,
I think there is no serious question but what in past years negroes have not been included in jury panels in proportionate numbers, but this court is concerned with present problems, not past problems.
The court stated that in one case at the term of court at which this case was tried there were four percent negroes on the panel and it overruled the motion to quash. The court was of the opinion that one list which showed certain percentages of negroes on the present jury list was sufficient to meet the demands of the occasion. The court also held:
The court realizes as does everyone that in the past years the number of negroes in the jury list have not been proportionate to their population, but in the juries taken from this new list, that list of April 1966, this court is of the opinion that there has been substantial compliance with the law.
And the motion was overruled. It will be noted the court in effect admitted that in past years the jury lists had not been prepared with fairness to all citizens, particularly the negro race. When this was admitted, it met the appellant's burden of proof that there had been discrimination in past years and that it was long continued and made a prima facie case of discrimination. This is especially true since the court confined the appellant to proof for the years 1964-1966 only. Thereupon the burden shifted to the State to refute such presumption by proof. Here the State put on no proof at all. No one testified how these lists were drawn; no one testified as to how the names were selected; and no one testified by whom they were selected. We do not think the list for one year  by itself and unexplained  is sufficient to meet the burden when it is admitted that in immediately past years there had been discrimination. Cf. Cameron v. State, 233 Miss. 404, 102 So.2d 355 (1958).
The admission by the court created the presumption of discrimination, and there is no evidence in this record which we can review and say there was no discrimination.
We are of the opinion that the case of Harper v. State, 251 Miss. 699, 171 So.2d 129 (1965), and the authorities there cited require that we reverse this case, sustain the motion of appellant to quash the entire venire, and remand the case to the lower court for further proceedings.
Reversed and remanded.
ETHRIDGE, C.J., and RODGERS, BRADY and INZER, JJ., concur.