Appellant Johnny C. Black was indicted and convicted in the Circuit Court of Attala County of the crime of burglary. The lower court sentenced him to ten years with the Mississippi Department of Corrections. With enhanced sentencing the entire term would be served without parole, since appellant had been convicted of two previous felonies, each of which resulted in sentences of separate terms of more than one year. (Mississippi Code Annotated, Section 99-19-81 (Supp. 1981).
On August 8, 1981, appellant was operating his vehicle on U.S. Highway 49 between Tchula and Lexington in Mississippi. One Katherine Ables Heffner was occupying the passenger side of the front seat of the vehicle. Mississippi Highway Patrolman Richard Williams stopped the car after ascertaining that it was being driven in an erratic manner. He found appellant to be intoxicated and determined it necessary that appellant be incarcerated in the County Jail at Lexington. The patrolman removed a loaded semi-automatic rifle from the front seat of the vehicle. He then called Ralph Scruggs, Regional Director for the Mississippi Bureau of Investigation, who was in the area, to come and take charge of the vehicle. While waiting for Scruggs, the female passenger, according to Williams, stated the appellant had forced her to be with him against her will; he had beaten her; and they had been in several houses. Williams testified that he saw articles on the back seat of the vehicle consisting of a television set, stereo and speakers.
Upon the arrival of Scruggs at the scene, Williams was directed to carry appellant and his passenger to Lexington, as appellant was intoxicated and the car was placed in charge of Scruggs. Both officers testified that an inventory of the car could not be made at that time and place as all patrolmen in the area were on special detail directing traffic between Tchula and Lexington, where a march was taking place. Due to this emergency situation all officers had to spend full-time on this detail. For this reason, Scruggs took the car to Tchula and placed it in a garage and locked the car. He then went back to the special work detail that was being performed by the patrolmen.
On the following morning, Scruggs and Officer Ronnie White went to Tchula for the purpose of making an inventory of the car which they were unable to do the day before. Attala County Deputy Sheriff William Hudson came to the car's location as he had received information that a house owned by James Palmertree in Attala County had been burglarized the day before.
It is undisputed and there are photographs which are introduced in evidence showing a television set, stereo set and speakers sitting in plain view on the back seat of appellant's car both at the time it was stopped by Officer Williams and when looked at by the other officers the following day.
Officers Scruggs and White unlocked the car and proceeded to inventory its contents. There is no dispute but that this was the first opportunity they had to make an inventory for the protection of the officers and the car owner, as is usually done under circumstances where it is necessary for the officers to impound a vehicle.
Articles other than the three mentioned above were secured from the vehicle and were taken in charge by the Mississippi officers. Later on, Mrs. Palmertree identified the television set, the stereo and speakers that were on the back seat of the car as being the articles stolen from the Palmertree home the preceding day.
Appellant assigns the following errors:
 I. THE TRIAL COURT COMMITTED ERROR IN ALLOWING INVESTIGATING AND/OR ARRESTING OFFICERS TO TESTIFY ABOUT OTHER CRIMES OR EVIDENCE OF OTHER CRIMES.
 II. THE TRIAL COURT COMMITTED ERROR IN REFUSING TO SUSTAIN *Page 821 
THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE TAKEN BY OFFICERS OF THE MISSISSIPPI HIGHWAY PATROL AT THE TIME WHEN THE CAR OF THE APPELLANT WAS SEARCHED WITHOUT A VALID SEARCH WARRANT.
Appellant's argument under the first assignment of error was that Patrolman Williams was allowed to testify about taking appellant to the Holmes County Jail. It is contended that this inferred that the appellant was involved in another crime. It is sufficient to say that this contention is wholly without merit. Of course, it is the general rule that evidence of other crimes perpetrated by the accused are generally not admissible. Rileyv. State, 254 Miss. 86, 180 So.2d 321 (1965). However, there are exceptions to this principle and one of them clearly is that it was proper for one of the officers to testify what happened to appellant after his car was impounded by the officers and to explain why it was impounded and not turned back over to appellant. Officer Williams did not testify that appellant was highly intoxicated and that his alcoholic blood content tested to be .260. It certainly was permissible for the officer to merely state what happened to Black because of the impounding of his vehicle.
Appellant contends that the alleged search of his car the morning after its impoundment was an illegal search without a valid search warrant. This Court has held that it is permissible for officers to conduct an inventory search of the vehicle when the circumstances require it to be impounded by the officers, regardless of the reason for the necessary impoundment. The reason for this is abundantly clear. It is for the protection of both the vehicle owner and the impounding officers. See Florencev. State, 397 So.2d 1105 (Miss. 1981).
It is contended that the inventory search should be done immediately. In the first place, we already have discussed the necessary delay. The United States Supreme Court has clarified this situation in a number of cases. In Cooper v. California,386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the inventory search was not made until a week after the arrest and the car impounded in a garage. The Court approved the delay as being necessary under the circumstances of that particular case saying:
 It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant but whether the search was reasonable." United States v. Rabinowitz, 339 U.S. 56, 66, 94 L.Ed. 653, 660, 70 S.Ct. 430 [435]. Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding.
In South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Court again discussed inventory searches pursuant to standard police procedures. The Court in reviewing the history of inventory and search questions stated the following:
 The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable. In the first such case, Mr. Justice Black made plain the nature of the inquiry before us:
 "But the question here is not whether the search was authorized by state law. The question is rather whether the search was unreasonable under the Fourth Amendment." Cooper v. California, 386 U.S. at 61, 17 L.Ed.2d 730, 87 S.Ct. 788 [at 790] (Emphasis added).
 And in his last writing on the Fourth Amendment, Mr. Justice Black said:
 "[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only `unreasonable searches and seizures.' The relevant test is not the reasonableness of the opportunity to procure a warrant, *Page 822 
but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts." Coolidge v. New Hampshire, 403 U.S. [443] at 509-510, 29 L.Ed.2d 564, 91 S.Ct. 2022 [at 2059-60] (concurring and dissenting) (Emphasis added).
 In applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents. In Cooper v. California, supra, the Court upheld the inventory of a car impounded under the authority of a state forfeiture statute. Even though the inventory was conducted in a distinctly criminal setting and carried out a week after the car had been impounded, the Court nonetheless found that the car search, including examination of the glove compartment where contraband was found, was reasonable under the circumstances. This conclusion was reached despite the fact that no warrant had issued and probably cause to search for the contraband in the vehicle had not been established. The Court said in language explicitly applicable here:
 "It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." 386 U.S. at 61-62, 17 L.Ed.2d 730, 87 S.Ct. 788 [at 790-91]."
 In the following Term, the Court in Harris v. United States, 390 U.S. 234, 19 L.Ed.2d 1067, 88 S.Ct. 992 (1968), upheld the introduction of evidence, seized by an officer who, after conducting an inventory search of a car and while taking means to safeguard it, observed a car registration card lying on the metal stripping of the car door. Rejecting the argument that a warrant was necessary, the Court held that the intrusion was justifiable since it was "taken to protect the car while it was in police custody." Id. at 236, 19 L.Ed.2d 1067, 88 S.Ct. 992 [993]."
 Finally, in Cady v. Dombrowski, supra, the Court upheld a warrantless search of an automobile towed to a private garage even though no probable cause existed to believe that the vehicle contained fruits of a crime. The sole justification for the warrantless incursion was that it was incident to the caretaking function of the local police to protect the community's safety. Indeed, the protective search was instituted solely because local police "were under the impression that the incapacitated driver, a Chicago police officer, was required to carry his service revolver at all times; the police had reasonable grounds to believe a weapon might be in the car, and thus available to vandals. 413 U.S. [433] at 436, 37 L.Ed.2d 706, 93 S.Ct. 2523 [at 2525]. The Court carefully noted that the protective search was carried out in accordance with standard procedures in the local police department, ibid.,
a factor tending to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function. See United States v. Spitalieri, 391 F. Supp. [167] at 169. In reaching this result, the Court in Cady distinguished Preston v. United States, 376 U.S. 364, 11 L.Ed.2d 777, 84 S.Ct. 881 (1964), on the grounds that the holding, invalidating a car search conducted after a vagrancy arrest, "stands only for the proposition that the search challenged there could not be justified as one incident to an arrest." 413 U.S. at 444, 37 L.Ed.2d 706, 93 S.Ct. 2523 [at 2529]. Preston therefore did not raise the issue of the constitutionality of a protective inventory of a car lawfully within the police custody.
 The holdings in Cooper, Harris, and Cady point the way to the correct resolution of this case. None of the three cases, of course, involves the precise situation presented here; but, as in all Fourth Amendment cases, we are obliged to look to all the facts and circumstances of this case in light of the principles set forth in these prior decisions. *Page 823 
 "[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case. . . ." Cooper v. California, 386 U.S. at 59, 17 L.Ed.2d 730, 87 S.Ct. 788 [at 790].
 The Vermillion police were undisputedly engaged in a caretaking search of a lawfully impounded automobile. Cf. United States v. Lawson, 487 F.2d 468 (CA 8 1973). The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. As in Cady, there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive.
 On this record, we conclude that in the following standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts, the conduct of the police was not "unreasonable" under the Fourth Amendment.
 The judgment of the South Dakota Supreme Court is therefore reversed and the case is remanded for further proceedings not inconsistent with this opinion.
Without question the facts relating to the inventory search of appellant's car clearly were not unreasonable and the inventory was authorized even though done the following morning after appellant's arrest.
The main purpose of publishing this opinion is to clarify the warrantless inventory-search questions. The record clearly reveals that no impartial jury could have returned a verdict other than guilty as charged. Officer White related appellant's confession of the crime in detail. Furthermore, the passenger in the car Katherine Ables Heffner testified for the state and related in detail the burglary of the Palmertree residence by appellant and his stealing the television, stereo and speakers. There is no reversible error and the cause is therefore affirmed.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, HAWKINS and PRATHER, JJ., concur.
DAN M. LEE, J., concurs only in result.