IRVING, J.,
for the Court.
¶ 1. Following a jury trial, Hance Chata-vius West was convicted of aggravated assault and felony failure to stop[1] and was sentenced by the Washington County Circuit Court to twenty years for the assault and five years for the failure to stop, with the sentences to run consecutively to one another, for a total of twenty-five years in the custody of the Mississippi Department of Corrections. Aggrieved, West appeals and asserts that the trial court erred in not granting him a continuance due to a discovery violation by the State and in allowing evidence of a prior bad act.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On January 8, 2006, Algea Clay drove her brother, Laurence Clay, to a store in Greenville, Mississippi, so that he could get some beer before going to a football party. When Algea and Laurence arrived at the store, West and some other men were standing outside. Laurence had been dating West’s sister, Odelia West, on and off for eight years and had recently had a falling out with her. Therefore, there was some prior negative history between West and Laurence when Laurence arrived at the store. In fact, evidence was introduced at trial that West had assaulted Laurence with a beer bottle in December 2005 after an argument between Laurence and Odelia.
¶ 4. There was conflicting testimony as to whether Laurence made it into the store to purchase the beer, or whether he was interrupted before doing so. In either case, both Laurence and Algea testified that, after seeing Laurence and possibly bumping into him, West went to his car and retrieved a handgun. When Laurence saw West with the gun, he began heading to Algea’s car and was near her car when he requested that West not shoot because Laurence’s young nephew was in the car. Sometime after Laurence asked West not to shoot at the car, West fired two shots at Laurence, who fled on foot. Laurence testified that he ran across a field next to a nearby church and that West chased after him the entire way, firing shots as they ran. Laurence estimated that West fired eight or nine shots in total, the second to last of which hit Laurence in the back as he fled.
¶ 5. As Laurence was fleeing from West, Agea started her car and drove in an attempt to help Laurence. Laurence testified that he encountered Agea not long after he was shot as he continued to run away from West, who apparently had stopped pursuing Laurence. At more or less the same time as he met up with his sister, Laurence also encountered Washington County Sheriff Milton Gaston, who was on his way home from church. Laurence and Agea told Sheriff Gaston what had happened, and the sheriff told Agea to take Laurence to the hospital.
¶ 6. Shortly after Laurence and Agea encountered Sheriff Gaston, Greenville police officers spotted an individual, West, who matched the descriptions given by Laurence and Agea. By the time the officers located West, he had gotten in his vehicle and was no longer on foot. However, when the officers attempted to pull West over, he fled from the officers. There was evidence that West was driving at speeds in excess of eighty to ninety miles per hour as he fled from police. Eventually, West exited his vehicle and attempted to run away from the officers on foot. West was eventually apprehended and taken into custody.
*150 ¶ 7. Both Laurence and Algea testified at trial, as did law enforcement who had either been involved in the apprehension of West or in taking statements from Laurence and Algea. West did not testify or offer any other witnesses on his behalf. The jury found West guilty of both aggravated assault and of felony failure to stop.
¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Discovery Violation

¶ 9. West contends that the court erred in refusing to grant him a continuance after the State provided copies of Laurence’s medical records for the first time on the morning of trial. Although West frames his argument in terms of a discovery violation, he is also clearly contending that the court erred in failing to grant him a continuance as a result of the violation. For the sake of thoroughness, we address each contention separately.

Discovery Violation

¶ 10. As West correctly notes, Rule 9.04(1) of the Uniform Rules of Circuit and County Court provides the procedure that courts should use when confronted with a discovery violation by the State. According to the rule:
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to ... examine the newly produced documents, photographs or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
(emphasis added). Despite West’s contentions, the trial court followed this procedure. When the defense objected to the State’s use of Laurence’s medical records, the court granted West and his attorneys a twenty-five minute continuance to review the materials. Our review of the record indicates that West did not thereafter claim unfair surprise or undue prejudice as a result of the late disclosure. In the absence of such an assertion, the court was under no obligation to sua sponte exclude the evidence. Any assertion of error on the court’s part for failing to follow the procedure in Rule 9.04 is clearly without merit.

Failure to Grant a Continuance

¶ 11. We note at the outset that, as the State points out, West’s posttrial motions did not include any mention of the court’s failure to grant a continuance, but addressed only the alleged discovery violation which we have already discussed. The State urges us to find that West’s first issue is procedurally barred on this ground. However, West clearly complained of the short period of time that the court gave him to look at the medical documents in the context of the State’s discovery violation. Therefore, we find that West’s posttrial claim of a discovery violation is sufficient for us to address any error in failing to grant West a longer continuance to review the documents.
¶ 12. West did not request an additional continuance beyond the twenty-five min *151 utes initially granted by the court. Furthermore, a much greater period of time than twenty-five minutes passed between the initial objection and Laurence’s testimony. Therefore, West and his attorneys had much longer than twenty-five minutes to review the records before having any use for them. West and his attorneys have also had a significant amount of time since the trial to review the records, but the only prejudice claimed by West on appeal is that he would have been able to hire an expert to review evidence in the records that indicated that Laurence had marijuana in his system when he was tested at the hospital. However, this part of the medical records was apparently clear enough to West’s attorney, who cross-examined Laurence regarding the presence of marijuana in his system on the day in question. Apparently, the time given by the court was sufficient for West’s attorney to extract this information from the medical records, and West does not state what additional information an expert would have been able to glean from the records.
¶ 13. We find that the time given to West was reasonable and he has been unable to show any prejudice resulting from the trial court’s failure to sua sponte grant him additional time to review the records. We find no error on the court’s part for failing to sua sponte grant West an additional continuance.

2. Admission of Prior Bad Act

¶ 14. West contends that the court erred in admitting evidence of the prior incident where he allegedly threw a beer bottle at Laurence. We review the admission of the evidence to see if the trial court abused its discretion in admitting Laurence’s testimony about the prior incident. Carter v. State, 953 So.2d 224, 229(¶ 11) (Miss.2007).
¶ 15. Rule 404(b) of the Mississippi Rules of Evidence states: “Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” The court allowed testimony about the prior incident on the basis that it showed motive. West contends that this ruling was in error, arguing that “[Laurence] being knocked out would not lead one to act out against him. [Laurence] would have a motive to act against West, if the incident in the lounge was true, not the other way around.” West further contends: “This evidence was admitted strictly to show prejudice against West and to show that he acted in conformity therewith on a particular occasion, not to show motive.”
¶ 16. If the only information about the prior incident that had been relayed to the jury was that West hit Laurence with a beer bottle, West’s argument above would be far more compelling. However, this was not the only information that was relayed. The entire incident can be roughly summarized: (1) Laurence had been dating West’s sister on and off for eight years; (2) at some point before the December bottle incident, Laurence accused West’s sister of giving him a sexually-transmitted disease (STD); (3) West’s sister confronted Laurence at the club in December; (4) at some point, West’s sister went to get West so that he could confront Laurence as well; (5) Laurence testified that West then came over to Laurence and attempted to engage him in an argument; and (6) Laurence then attempted to leave, at which time he was hit by a beer bottle and was temporarily knocked out. Clearly this incident goes to show West’s motive in *152 assaulting Laurence: namely, that Laurence had accused West’s sister of having an STD and of transmitting that STD to Laurence. Laurence testified: “Well, they both came to confront me. They was both talking crazy or whatever.... He told me don’t disrespect his sister.” (emphasis added). The incident helped establish that West had a prior animus against Laurence. We cannot find that the court abused its discretion in admitting testimony about the prior incident.
¶ 17. West also contends that the evidence was inadmissible under Rule 403 of the Mississippi Rules of Evidence, which reads: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” West contends that the court erred in not conducting a Rule 403 balancing test after West objected to the admission of the incident.
¶ 18. Although the Mississippi Supreme Court has stated that a balancing test should be conducted once there has been an objection to the evidence, the court has also clarified that failure to do so does not necessitate reversal of a case:
When reviewing evidentiary determinations, this Court necessarily accords broad discretion to our trial courts. In Jenkins v. State, 507 So.2d 89 (Miss. 1987), we explored the reasoning behind our deference and stated that, as a matter of institutional necessity, we must accord certain leeway to the circuit court. Id. at 93. Moreover, the weighing and balancing task required by Rule 403 is not one susceptible of mechanical performance as it asks only that a judge rely on his/her own sound judgment.
Id. As such, the law gives the trial court discretion. Id.
In asserting that his due process rights were violated when the trial court judge failed to perform an on-the-record Rule 403 balancing test, Jones has misapprehended the nature of our rules of evidence and the discretion afforded to trial judges when applying these rules. Accordingly, while we clearly interpret the rules of evidence as requiring that all otherwise admissible evidence be “filtered” through the balancing test set forth in Rule ⅛03, we do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal. Though this Court certainly expects trial judges to have considered Rule 403 in making their evi-dentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words. From a practical standpoint, even though this issue in today’s case was initially addressed at a motion hearing, quite often the trial judge is required to make Rule 403 rulings from the bench with a witness on the stand, a jury in the box, and a lawyer on the floor making an objection. It follows that our review depends on the evidence and not the judge, and while a judge’s on-the-record analysis is recommended as it serves to fortify the judge’s position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial. The judge’s failure to perform an on-the-record Rule 403 analysis in no way affected Jones’s rights. Moreover, the evidence of the September 6 incident was properly admitted as its probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Miss. R. Evid. 403.
*153 Jones v. State, 920 So.2d 465, 475-76 (¶¶ 33-34) (Miss.2006) (emphasis added).
¶ 19. Although the court here failed to conduct an on-the-record balancing test, the failure to conduct the test did not affect West’s rights. Like the Jones court, we conclude that the incident here “was properly admitted as its probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.” The probative value of the evidence was extremely significant, as it gave meaning to what would have otherwise been a random act of violence. In addition, the court here sua sponte issued a limiting instruction that told the jury not to consider the evidence as evidence of West’s character, but only to consider the evidence as it related to West’s motive.
¶ 20. West also complains that Laurence testified that he did not personally see West throw the bottle, but was told later that it was West who had thrown the bottle at him. We find that the details and specifics of the incident were well within Laurence’s personal knowledge. That he could only confirm that West had thrown the bottle after the incident because the bottle temporarily rendered him unconscious is of no help to West. Furthermore, given the overwhelming weight of the evidence against West, any error in admitting Laurence’s testimony about the prior incident is harmless. Tate v. State, 912 So.2d 919, 926(¶ 18) (Miss.2005).
¶ 21. This issue is also without merit.
¶ 22. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT IN COUNT I AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND CONVICTION OF FELONY FAILURE TO STOP IN COUNT II AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCE TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. Miss.Code Ann. § 97-9-72 (Rev.2006).