CARLTON, J.,
 

 for the Court.
 

 ¶ 1. Elliot Allen Young was convicted by a Walthall County jury of two counts of unlawful sale of cocaine to an undercover informant. The circuit court sentenced him as a habitual offender to life in the custody of the Mississippi Department of Corrections without eligibility for parole or probation along with a fine of $5,000 for each count, $300 in restitution to the Mississippi Crime Laboratory, and $300 in restitution to the Southwest Mississippi Inter-Jurisdictional Narcotics Enforcement Unit (SMINEU). He now appeals his conviction and resulting sentence, alleging the following errors: (1) the circuit court erred in finding that Young’s prior conviction for possession of cocaine was more probative than prejudicial, and (2) the verdict was against the overwhelming weight of the evidence. Finding no error, this Court affirms his conviction and sentence.
 

 FACTS
 

 ¶2. Agent Dan Hawn of the Walthall County Sheriffs Department employed Dexter Cook to go into a known drug area of Walthall County and attempt to buy drugs. On both May 16, 2006, and May 24, 2006, Agent Hawn and another officer met Cook at a pre-buy location where Cook was searched and equipped with audio and video recording equipment. He was given money with documented serial numbers with which to buy the drugs.
 

 ¶ 3. On May 16, Agent Hawn dropped Cook off at Martin Luther King Road with instructions to travel to the area of Magee Badon Road and attempt to purchase drugs. The officers did not specify from whom Cook was supposed to buy the drugs. The officers could hear him through his audio transmitter attempting to make drug buys from several different people. Then, officers heard a drug transaction taking place with an unidentified person who was later determined to be Young. When Cook returned, he turned over the drugs that were placed in evidence bags and given to the Mississippi Crime Laboratory. The agents reviewed the audio and videotape evidence from the buy and identified Young as the individual who sold the drugs to Cook. The videotape shows Cook and Young together in a trailer. Young is heard telling Cook to let him go get his “dope and stuff.” Young is then shown coming back into the part of the trailer where the transaction is made. The videotape does not show the exact object that is exchanged for the money.
 

 ¶ 4. On May 24, 2006, Cook was again used as a confidential informant by Agent Hawn. Cook was informed to go and attempt to buy crack cocaine. He was given the same video and audio equipment as well as more money with documented serial numbers with which to buy the drugs. Cook again traveled to Magee Badon Road where he made contact with Young. Young is heard saying, “I don’t think I’ve got that much.” Cook responds, ‘Well, can you do fifty?” Young then leaves the view of the camera, returns, and the videotape shows him holding something in his hand and saying something to the effect of “give me forty.” At that time, Cook returned to meet Agent Hawn. He returned all but forty dollars, which had been issued
 
 *341
 
 to him, along with crack cocaine. The drugs were placed in an evidence bag and transported to the crime lab.
 

 ¶ 5. Young was arrested on May 27, 2006. Officers recovered two ten dollar bills from Young that had previously been documented and given to Cook to buy drugs on May 16, 2006.
 

 ¶ 6. Young was tried by a jury in Walt-hall County. Prior to his case-in-chief, Young informed the trial judge that he was going to testify. Defense counsel indicated to the trial judge that Young had been informed that he would be subject to cross-examination by the State if he testified. At that time, the prosecution notified the trial judge that the State would seek to impeach Young with his prior convictions of robbery and unlawful possession of cocaine.
 

 ¶ 7. The trial judge held the robbery conviction to be inadmissible, but the judge allowed the prior possession charge to come in for impeachment purposes. After going through a
 
 Peterson
 
 analysis, the trial judge found that there was more probative value in admitting the evidence than prejudicial effect with regard to the prior conviction of cocaine possession in light of the posture of the case. The judge stated that the crime had impeachment value given the posture of the current case and defense counsel’s remarks during his opening statement. During his opening statement, defense counsel made the remark that “these charges are preposterous, and it’s a set-up situation and [Young] certainly did not sell cocaine to the confidential informant.” The defense’s theory during trial was that Young had never sold cocaine to the informant, Cook instead, he had only sold him twenty Viagra pills. Young also attempted to prove during trial that his arrest had been part of a conspiracy by the police to force Young to reveal information about an unrelated murder case.
 

 ¶ 8. After his jury trial, Young was convicted of two counts of unlawful sale of cocaine to an undercover informant. He was sentenced as a habitual offender to life imprisonment without the eligibility for parole or probation on both counts.
 

 ANALYSIS
 

 I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT THE PROBATIVE VALUE OF THE PRIOR CONVICTION FOR POSSESSION OF COCAINE OUTWEIGHED THE PREJUDICIAL EFFECT.
 

 ¶ 9. Mississippi Rule of Evidence 609(a)(1)(B) states that evidence that a party has been convicted of a crime shall be admitted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the party. The standard of review for admission or exclusion of evidence is the abuse of discretion standard.
 
 Herring v. Poirrier,
 
 797 So.2d 797, 804(¶ 18) (Miss. 2000). “Where such error is found, this Court ‘will not reverse unless the error adversely affects a substantial right of a party.’ ”
 
 Tate v. State,
 
 912 So.2d 919, 924(¶ 9) (Miss.2005) (quoting
 
 Ladnier v. State,
 
 878 So.2d 926, 933(¶ 27) (Miss.2004)).
 

 ¶ 10. Young contends that it was an abuse of discretion to admit the prior conviction of possession of cocaine because the probative value of the prior conviction was outweighed by its prejudicial effect. Young claims that the State’s purpose in bringing up the prior charge was to make the jury infer present guilt from his past conviction for a similar offense. In this case, the trial judge did not abuse his discretion in admitting into evidence Young’s prior conviction for possession of cocaine within 1,500 feet of the school,
 
 *342
 
 which he concluded was probative given the posture of the case after he conducted a
 
 Peterson
 
 analysis and a Rule 403 balancing test on the record.
 
 Peterson v. State,
 
 518 So.2d 632, 638 (Miss.1987).
 

 ¶ 11. While the defense did not use the word “entrapment” and did not assert the affirmative defense of entrapment,
 
 [1]
 
 the record indisputably reflects that both Young in his testimony and his counsel in opening statement claimed a “set-up” with “ridiculous charges.” The trial judge evaluated the relevance of this claim to the impeachment of Young in light of the posture of this case. Clearly, the intent of the defendant was put into issue by the defendant’s own testimony as well as by the defense’s theory of the case. A prologue of the theory was provided by his counsel’s opening statement.
 

 ¶ 12. Therefore, the prior conviction was admissible in accordance with Mississippi Rule of Evidence 404(b) with respect to intent as well as Mississippi Rule of Evidence 609 to impeach his claim of a setup and law enforcement conspiracy.
 

 ¶ 13. With respect to whether the trial judge abused his discretion and displayed due consideration, the trial judge evaluated the two prior convictions of Young' — a robbery conviction and the possession conviction noted above, — utilizing the
 
 Peterson
 
 analysis. The trial judge concluded that only the conviction relating to the drug possession was probative given the posture of the facts of this ease. Then, the jury, after listening to the evidence and weighing the evidence, found Young guilty of selling cocaine to Cook, a confidential informant, on May 16, 2006, and selling cocaine again to the same confidential informant eight days later on May 24, 2006.
 

 ¶ 14. The testimony the jury digested included Young’s own testimony. Young testified in his defense that he knew that Cook was with the police, meaning that he knew that Cook was a confidential informant. Young testified that since he knew Cook was with the police, he would only sell Viagra to him at $2 a pill.
 

 ¶ 15. Young further testified that he was targeted because he had a prior felony and because one of his friends had been killed. He explained that law enforcement had previously seen him with his friend. He alleged that the police targeted him because they wanted him to reveal who had killed his friend. He continued to explain that the law enforcement conspiracy was to pin a life sentence on him since he had been convicted of a felony before and to pressure him for his information about his murdered friend. However, he disclaimed any knowledge as to whom had killed his friend.
 

 ¶ 16. Young’s prior conviction was a part of his own defense theory as to why law enforcement targeted him. Young also admitted to selling “a substance” to the confidential informant Cook on these two occasions charged in the indictment. However, he testified that he sold Viagra to Cook, even though he is heard on the audiotape of one of the two sales saying “let me get my dope, I’ll be back.” Young accused the confidential informant and the undercover agents of being liars and accused them of tampering with the evidence. He claimed that the confidential informant bought the cocaine from someone else and switched the cocaine for the Viagra. He also asserted that the drugs tested by the lab were powder cocaine and not the rock cocaine that law enforcement claimed that he had sold. He also claimed that his image on the videotape introduced at trial had been altered, but he admitted that the image on the videotape was him.
 
 *343
 
 The jury considered the following evidence: the confidential informant’s testimony, the agent’s testimony, the pre-buy preparation and searches of the confidential informant, the chain of custody for exhibits of the evidence and the crime lab analysis, the audio and videotapes of the transactions, and the post-buy searches. In addition to being relevant to Young’s defense theory as to why law enforcement targeted him, the jury was also presented evidence of Young’s intent as to whether he intended to sell cocaine or Viagra.
 

 ¶ 17. Young, through his own testimony, put his intent into issue at trial.
 
 Carter v. State,
 
 953 So.2d 224, 229(¶ 11) (Miss. 2007);
 
 Jones v. State,
 
 904 So.2d 149, 153(¶ 10) (Miss.2005) (prior convictions admissible to show intent).
 

 ¶ 18. Young’s defense theory was in the vein of entrapment, while not a classic case of entrapment defense. As previously explained, the record reflects that Young definitely claimed there had been a “setup” and evidence tampering. Young admitted to the two sales, but he denied any intent to sell cocaine. He also admitted on direct examination to a prior criminal relationship with the confidential informant. He testified that he had assisted the confidential informant on previous occasions in knowingly selling stolen goods-lumber saws. He also claimed to have previously sold the confidential informant Viagra on numerous occasions. However, Young testified that he did not need Viagra and did not personally have a prescription for Viagra. He admitted that he was not a pharmacist. He explained that he bought Viagra from a guy in his neighborhood, and he in turn sold the Viagra to people with problems. Young further asserted that the confidential informant had a “problem” because he smoked too much crack. Young denied selling cocaine; rather he claimed that the confidential informant had tampered with the evidence and bought the .cocaine from someone else and switched it with the Viagra.
 

 ¶ 19. This case is similar to
 
 Tate v. State,
 
 912 So.2d 919 (Miss.2005). In that case, agents with the Mississippi Drug Task Force arranged for a confidential informant to make a purchase of illegal drugs from Tate. The two met in a parking lot of a tobacco store where Tate gave a quantity of marijuana to the confidential informant. The confidential informant gave a code word to the narcotics agents over a hidden wire, and numerous agents swarmed to the scene. The agents discovered three more packages of marijuana in Tate’s possession — one on his person, one in the front seat of his vehicle, and one hidden in a secret compartment of his vehicle. Tate was arrested on charges of possession with intent to deliver and delivery of more than an ounce but less than a kilogram of marijuana. The State offered Tate’s prior convictions for sale under Rule 404(b) to show intent and predisposition contrary to Tate’s claim of entrapment.
 

 ¶20. Tate, like Young in the case before us, claimed that the confidential informant had planted the evidence. Tate claimed that the only marijuana belonging to him was that marijuana found on his person, and the other marijuana found in his vehicle did not belong to him. Tate asserted that the confidential informant planted the other two packages of marijuana at his home without his knowledge. Tate also claimed that the confidential informant told him that he was leaving drugs in the shed at his home. Tate’s defense at trial was that when he met the confidential informant on the day of the arrest, he was not selling any marijuana; he was only trying to return the marijuana to the confidential informant. The
 
 Tate
 
 court explained that a classic case of en
 
 *344
 
 trapment is where the law enforcement is both the supplier and the buyer of the contraband that is the subject of the defendant’s arrest.
 
 Id.
 
 at 924-25(¶ 10) (citing
 
 Moore v. State,
 
 534 So.2d 557, 558 (Miss. 1988)). Tate alleged that the confidential informant was the supplier and the buyer of the marijuana. In the case at bar, Young claims that. Cook, the confidential informant, was the buyer and supplier of the cocaine in that he alleged Cook switched the Viagra for the cocaine.
 

 ¶ 21.
 
 Tate,
 
 912 So.2d at 925(¶ 11) provides:
 

 Entrapment has been defined as “the act of inducing or leading a person to commit a crime
 
 not originally contemplated
 
 by him, for the purpose of trapping him for the offense.”'
 
 Hopson v. State,
 
 625 So.2d 395, 399 (Miss.1993) (emphasis added) (citing
 
 Phillips v. State,
 
 493 So.2d 350, 354 (Miss.1986);
 
 McLemore v. State,
 
 241 Miss. 664, 675, 125 So.2d 86, 91 (1960)). The defense of entrapment is affirmative and must be proved by the defendant. If the defendant already possessed the criminal intent, and the request or inducement merely gave the defendant the opportunity to commit what he or she was already predisposed to do, entrapment is not a defense.
 
 Id.
 
 (citing
 
 Bush v. State,
 
 585 So.2d 1262, 1264 (Miss.1991)). Thus, predisposition to commit the crime becomes an issue when a defendant raises an entrapment defense.
 

 ¶ 22. This Court has held, as explained in
 
 Tate,
 
 that a defendant’s prior drug activity is admissible on the issue of predisposition.
 
 See Hopson,
 
 625 So.2d at 402. Similarly in this case, since Young claimed to have been setup and that the confidential informant switched the drugs, Young’s intent was placed in issue. Young’s prior conviction for possession was admissible to show intent and to impeach his claim of a setup, and it constituted an important thread of his defense strategy as to why he was targeted.
 

 ¶ 23. The trial judge in this case went further than just evaluating prejudice under Mississippi Rule of Evidence 403. The trial judge conducted a
 
 Peterson
 
 analysis and found the following:
 

 The Court finds that the
 
 Peterson
 
 test is satisfied by the possession conviction March 20 of 2000, and that the Court finds that the probative value of admitting the evidence outweighs any prejudicial effect. The crime has impeachment value, given the posture of the case, and given the remarks of counsel for Defense in . opening statement. It was within the last I guess seven years, around seven years ago, so the timeliness of it weighs in favor of the admissibility. There’s a similarity between that and the act charged here which, as far as prejudicial effect, weighs in the Defendant’s favor — the third factor in
 
 Peterson,
 
 but the importance of the Defendant’s testimony and the centrality of the credibility issue I think very clearly tipped the scales in favor of admissibility, and it has great — it has probative value, and the prejudicial effort would be minimal, if any. Certainly under Rule 403[it] would not be unduly or unfairly prejudicial.
 

 ¶ 24. If the defendant wanted a limiting instruction, he could have requested that such be given. In this case, the defendant not only failed to request a limiting instruction, he evidentially objected to the State’s proposed jury instruction S-8 regarding prior drug activity. Hence, the court instructed the State to withdraw that instruction. Young cannot now claim a benefit from a lack of an instruction that he failed to request and to which he objected.
 

 
 *345
 
 ¶ 25. Based on the foregoing reasons, the trial judge did not abuse his discretion. He conducted a Rule 403 balancing test as well as a
 
 Peterson
 
 analysis based on the facts and posture of the case before the trial court. At the time of the motion hearing wherein the trial judge conducted the
 
 Peterson
 
 and Rule 403 analysis, the defense had already painted a picture in its brief, but pointed, opening remarks of a set-up defense based on ridiculous charges. Young put his intent into issue, and the trial judge did not abuse his discretion in admitting the prior possession charge to impeach Young with respect to his claimed set-up and to show intent.
 

 II. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
 

 ¶26. Young also contends that the jury’s guilty verdict was against the overwhelming weight of the evidence. This Court will disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
 
 Bush v. State,
 
 895 So.2d 836, 844(¶ 18) (Miss.2005) (citing
 
 Herring v. State,
 
 691 So.2d 948, 957 (Miss.1997)).
 

 ¶ 27. Young argues that it was just his word against that of Cook. However, as previously recounted, there was videotape evidence which strongly supported that Young sold drugs to the informant Cook. There also was additional evidence including the recovered cocaine, testimony of supervising law enforcement agents, and Young’s own testimony. It is the responsibility of the jury to resolve the credibility of the witnesses.
 
 Mamon v. State,
 
 724 So.2d 878, 881(¶ 13) (Miss.1998).
 

 ¶28. There was more than sufficient evidence to support the jury’s verdict. All the elements of sale of cocaine were established by credible evidence.
 

 CONCLUSION
 

 ¶ 29. We affirm the judgment of the Circuit Court of Walthall County.
 

 ¶ 30. THE JUDGMENT OF THE WALTHALL COUNTY CIRCUIT COURT OF CONVICTION OF TWO COUNTS OF SALE OF COCAINE AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION AND TO PAY A $5,000 FINE FOR EACH COUNT, $300 RESTITUTION TO THE MISSISSIPPI CRIME LAB, AND $300 RESTITUTION TO THE SOUTHWEST MISSISSIPPI INTER-JURISDICTIONAL NARCOTICS ENFORCEMENT UNIT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WALTHALL COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . The defense did not request any entrapment jury instruction.