# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-01589-SCT

*RICKY CARTER a/k/a RICKIE CARTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/27/2005 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PEARSON LIDDELL, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. DANIEL HINCHCLIFF |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/05/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Following a jury trial in the Circuit Court of Oktibbeha County, Ricky Carter was convicted of attempted burglary of a dwelling and sentenced, as a habitual offender, to serve a term of twenty-five (25) years in the custody of the Mississippi Department of Corrections ("MDOC").  After Carter's motion for new trial or J.N.O.V. was denied by the circuit court, he filed notice of appeal.  On appeal, Carter raises the following assignments of error: (1) whether the circuit court erred by admitting Carter's prior felony convictions into evidence and (2) whether the circuit court erred in instructing the jury that it could consider Carter's prior felony convictions as motive when they had not been introduced for that purpose.

# FACTS

¶2.     Paul Buckley lived on a secluded, gravel road in Oktibbeha County, Mississippi.[1]  On

January 7, 2003, at approximately 3:00 p.m., Buckley arrived home early from work and sat

down at the desk in his living room.  Buckley's desk was not visible from any windows with

the blinds open.  Soon thereafter, Buckley:

> heard the rear door . . . .  [I]t was locked, and the doorknob was not locked.
> And I heard the distinct sound that it was being tried and forced open but the
> deadbolt caught it.[2]  I thought it might be my wife coming home . . . early.
> So, I walked around . . . and I saw a man going around this way quickly from
> the door and it looked like he was trying to look into [the house through] this
> [bay] window.  I went to the phone . . . [b]ecause I was immediately alarmed
> and called 911.
>
> Then, I came back at this door to make sure it was locked.  And he came
> around and then got a few feet away and saw me, and he was startled.  Then,
> he became very agitated that I was there.

According to Buckley, the accused began "talking very quickly . . . saying that he was

looking for a job, and wasn't this the 16th section road?  And I said, no.  He said he was

trying to find a plumber named David Montgomery, I think."  Remaining on the line with

911, Buckley told Carter through the door that he had called the police.  At that point, Carter

"said a few more things about he was just looking for a job from this plumber."

¶3.     Officer Tommy Whitfield, a deputy sheriff with the Oktibbeha County Sheriff's

Department at the time of this incident, testified that as he pulled into Buckley's driveway,

---

[1]According to Buckley, Hewlett Road is "a cul-de-sac road, so there's no traffic on
it, really.  And you can't see the houses from the Old West Point Road."  His home faces
Hewlett Road and is one of four houses thereon, each spaced roughly 100-150 yards apart.

[2]Buckley testified that he never heard knocking or the doorbell ringing at either the
front or back door of his home.  Furthermore, he stated that the door "was jiggling and it was
being *forced against the deadbolt*.  You know, [they were] *coming in*."  (Emphasis added).

2

he "met [Carter] coming across the front yard, toward my car."  At that point, Officer

Whitfield:

> asked him who he was.  He gave me a name.  I don't remember what name he
> gave me.  And I started to call it in, and then he stopped me and told me that
> he had lied to me, that that wasn't his real name.  He said that he didn't give
> me his real name because . . . he thought there was a warrant for his arrest
> from Clay County.  He gave me his real name.  I called it in and ha[d] them
> chec[k] it, and there was a warrant from Clay County.  So, I went ahead and
> placed him in custody. . . .

¶4.     Once Officer Whitfield left with Carter in custody, Buckley went into his back yard

and noticed that a gate which he "never left . . . open" and only used rarely "for taking debris

out of [his] garden[,]" was open.  While Buckley admitted that he had not checked if the gate

was open or closed when he arrived home that day, he further stated that he had probably not

used the gate "for two or three months."

¶5.     According to Officer Whitfield, while Carter was in custody, he:

> told me that he had caught a ride out there with a person who he had known
> since high school, Ken Wilkerson [sic].  He said it was his classmate and he
> had given him a ride out there to try to talk to a David Montgomery about a
> job.  I didn't know Ken personally.  But I knew . . . one of the corrections
> officer[s] knew him.  So, I had him . . . try to get in touch with Mr. Wilkinson
> to see if that was true . . . .

Later that afternoon, Wilkinson received a phone call from the Oktibbeha County Sheriff's

Department while he was in Mobile, Alabama.  He stated that he had left for Mobile around

10:00 a.m. that day and had not seen Carter.  Furthermore, Wilkinson testified that while he

and Carter were classmates at Starkville High in the mid-1980's, he had not seen Carter in

years.  Officer Whitfield then:

> had the dispatcher's pul[l] up the driver records for Mississippi for David
> Montgomery's.  There were no David Montgomery's in Oktibbeha or Clay

3

County.  I checked the . . . 911 books and the 911 center that have who owns houses in Oktibbeha County, there were no David Montgomery's listed in any of the registers.

¶6.     On July 10, 2003, an indictment was filed against Carter, stating:

Ricky Carter . . . on or about [the] 7th day of January 2003 . . . did unlawfully, wilfully, feloniously, and burglariously attempt to break and enter the dwelling house of Paul Buckley, with the intent to unlawfully, willfully, feloniously, and burglariously take, steal, and carry away the property that was then inside, and in furtherance thereof, did the following overt acts:

1. by going to the residence of Paul Buckley;
2. by attempting to open the back door of the said residence,

but was intercepted and failed therein;

in violation of MCA § 97-17-23[3] . . . .

On November 5, 2003, Carter entered a plea of not guilty to the charge of attempted burglary.

Thereafter, on February 5, 2004, the State filed a motion to amend the indictment for the

purpose of "includ[ing] the Habitual Offender language pursuant to Section 99-19-81 M.C.A.

---

[3]That section provides:

[e]very person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary *not less than three (3) years nor more than twenty-five (25) years*.

Miss. Code Ann. Section 97-17-23 (Rev. 2006) (emphasis added).

4

(1972)[4] . . . ." In support thereof, the State sought to introduce evidence of six of Carter's prior convictions.

¶7. The jury trial commenced on July 26, 2005, in the Circuit Court of Oktibbeha County. Following testimony, the State moved to introduce evidence of Carter's prior convictions. In so doing, the State argued that:

> [Carter's] prior convictions would prove to show his *intent* along with other factors . . . that the Court has already heard: [c]oming in through the back gate, not using the front door, things of that nature that Mr. Buckley has obviously already testified to. . . . [T]hese should be admissible to prove solely the intent of this defendant. It is not use[d] for character evidence. . . . And the Court can give the jury a limit[ing] instruction to that effect.

(Emphasis added).[5] In granting the State's motion, the circuit court determined that:

> in this particular case, given the facts thus far, the intent of the defendant is greatly an issue. . . . [This evidence] is extremely probative of his intent, a necessary element, and that outweighs the prejudicial effect in this case. . . . If requested, the limiting instruction will be given to the jury that they can only use prior convictions to show intent.

---

[4]That section provides:

> [e]very person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, *shall be sentenced to the maximum term of imprisonment prescribed for such felony*, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

Miss. Code Ann. Section 99-19-81 (Rev. 2006) (emphasis added).

[5]The State further asserted that, "Carter did in fact on five of these convictions stand before the Court and pled guilty to each one. Burglary of a dwelling, he was found guilty of the crime by a jury. I believe that would be admissible to show that is his intent in that particular crime."

5

¶8.    Evidence of Carter's prior convictions included:

(1) An indictment in Cause # 11-068 in Oktibbeha County charging Carter with automobile burglary with the intent to take, steal, and carry away. Attached was a sentencing order from February 5, 1986, whereby Carter withdrew his plea of not guilty and entered a plea of guilty to the charge of burglary and was sentenced to serve seven (7) years in the custody of the MDOC.

(2) An indictment in Cause # 11-069 in Oktibbeha County charging Carter with automobile burglary with the intent to take, steal, and carry away. Attached was a sentencing order from February 5, 1986, whereby Carter withdrew his plea of not guilty and entered a plea of guilty to the charge of burglary and was sentenced to serve seven (7) years in the custody of the MDOC, to run concurrently with Cause # 11-068.

(3) An indictment in Cause # 11-622 in Oktibbeha County charging Carter with grand larceny, specifically with the intent to take, steal, and carry away a 1988 Nissan Sentra. Attached was a sentencing order from April 24, 1989, whereby Carter withdrew his plea of not guilty and entered a plea of guilty to the charge of grand larceny and was sentenced to serve three (3) years in the custody of the MDOC, "to run consecutively with the terms of [Carter's] sentence under revocation of his probation."

(4) An indictment in Cause # 12-480 in Oktibbeha County charging Carter with burglary of a dwelling with the intent to take, steal, and carry away. Attached was a sentencing order from October 20, 1992, whereby a jury found Carter guilty as charged and he was sentenced as a habitual offender to serve ten (10) years in the custody of the MDOC, with the additional

6

condition that "such sentence shall not be reduced nor suspended nor shall [Carter] be eligible for parole or probation."

(5) An indictment in Cause # 6876 in Clay County charging Carter with burglary and larceny of a business with the intent to take, steal, and carry away the property of another. Attached was a sentencing order from October 14, 1994, whereby Carter withdrew his plea of not guilty and entered a plea of guilty to the charge of burglary and larceny of a business and was sentenced to serve seven (7) years in the custody of the MDOC, to run concurrently with the sentence he was serving from Cause # 12-480 in Oktibbeha County, with the additional condition that "such sentence shall not be reduced nor suspended nor shall [Carter] be eligible for parole or probation."

(6) An indictment in Cause # 8496 in Clay County charging Carter with the felony of taking a motor vehicle with the specific intent of taking possession of the property of another. Attached was a sentencing order from April 6, 2005, whereby Carter withdrew his plea of not guilty and entered a plea of guilty to the charge of taking of an automobile in violation of Miss. Code Ann. Section 97-17-42 and was sentenced to serve sixteen (16) months in the custody of the MDOC.

¶9.     After granting the State's motion to introduce Carter's prior convictions, the circuit court granted the State's motion to amend the indictment to reflect Carter's status as a habitual offender.[6]  Furthermore, the circuit court overruled Carter's motion for directed

---

[6]The circuit court determined that "[t]here can be no issues of unfairly surprised since prior convictions and the [m]otions were known both to the defendant and to defendant's counsel.  Therefore, under [Uniform Circuit and County Court] Rule 7.09, the amendment shall be allowed."

7

verdict. Thereafter, the jury found Carter "guilty as charged" and, by virtue of Miss. Code Ann. Section 99-19-81 (Rev. 2006), the circuit judge stated "the only sentence that I am authorized to impose is a sentence of 25 years in the [MDOC] as a habitual offender, not to be reduced by any early release whatsoever." Carter filed his motion for new trial or J.N.O.V., which was subsequently denied by the circuit court. Carter timely filed notice of appeal.

## ISSUES

¶10. This Court will consider:

(1) Whether the circuit court erred by admitting Carter's prior felony convictions into evidence.
(2) Whether the circuit court erred in instructing the jury that it could consider Carter's prior felony convictions as motive when they had not been introduced for that purpose.

## ANALYSIS

**I. Whether the circuit court erred by admitting Carter's prior felony convictions into evidence**.

¶11. Mississippi Rule of Evidence 404(b) provides that:

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Miss. R. Evid. 404(b). In admitting evidence of Carter's prior felony convictions for the limited purposes of showing intent, the circuit court determined that "in this particular case, given the facts thus far, the *intent* of [Carter] is greatly an issue." (Emphasis added). That determination was permissible under Miss. R. Evid. 404(b). *See* Miss. R. Evid. 404(b) ("may

. . . be admissible for . . . proof of . . . intent . . . ."). Moreover, the circuit court analyzed the evidence under Miss. R. Evid. 403[7] and found that it was "extremely probative of [Carter's] intent, a necessary element, and that outweighs the prejudicial effect in this case." "[O]ur task as an appellate court reviewing a Rule 403 determination is not to engage anew in the Rule 403 balancing process. Rather, this Court must simply determine whether the trial court *abused its discretion* in weighing the factors and admitting or excluding the evidence." ***Baldwin v. State***, 784 So. 2d 148, 156 (Miss. 2001) (citations omitted) (emphasis added).

¶12. Carter concedes that "[b]ecause of the closeness of the evidence and the inchoate nature of the crime, the jury's key duty was having to determine [Carter's] intent, namely, whether it was burglarious or whether he was merely a trespasser gone horribly awry." However, he argues that prior convictions are inherently prejudicial and, therefore, "the trial court should not have allowed the admission of the prior convictions because their probative value was far outweighed by the unfair prejudice standard." In so arguing, Carter attempts to distinguish his case from ***Jones v. State***, 904 So. 2d 149 (Miss. 2005).

¶13. In ***Jones***, the defendant:

> approached the home of Kevin Voyles and knocked on the door. Voyles testified that it was his belief that Jones was attempting to break into his house. Jones admitted he may have knocked too hard, but denied kicking, or in any other way, attempting to force entry. Voyles, on the other hand, testified that Jones banged and kicked on his door to the point that it scared him. Voyles called 911 and then retrieved a gun. Voyles also testified that he peered through the window and saw Jones with a knife in his hand.

---

[7]Which states, "[a]lthough relevant, evidence *may* be *excluded if* its *probative value is substantially outweighed by* the *danger of unfair prejudice*, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Miss. R. Evid. 403 (emphasis added).

9

The investigating officer testified that the door had dents and scratches on it, particularly around the peephole. Items were knocked off the interior wall of the house and were found lying on the floor near the door. The peephole of the door was also found lying on the floor inside the house.

When first questioned, Jones claimed that he knew nothing about the incident. Later, Jones admitted that he was at the residence, but said he was there in an attempt to retrieve water for his over-heated car. . . . [T]here was no corroborating evidence that supported Jones'[s] claim that he had radiator problems on the specific day of the incident.

Jones was convicted of attempted burglary of a dwelling.

*Id*. at 151-52. In *Jones*, the State "introduced evidence of Jones'[s] prior convictions for burglary and attempted burglary solely for the purpose of proving his intent to commit larceny in the Voyles' home." *Id*. at 152. This Court found that "[i]ntent was shown by the fact that Jones admitted (by pleading guilty) to five prior burglaries and to one attempted burglary. . . . The prior convictions tend to prove, along with other facts, that Jones'[s] intent was to burglarize the house, not to obtain help." *Id*. at 153. As such, this Court concluded that the circuit court did not abuse its discretion in admitting evidence of Jones's prior convictions. *See id*.[8]

¶14.    Carter argues that *Jones* presented a "'perfect storm' of facts that would reasonably allow prior crimes into evidence against a Defendant to show intent without unfairly prejudicing the Defendant." In support thereof, Carter notes that Jones had "six times previously admitted to burglary or attempted burglary with the intent to commit larceny" and

_____

[8]Of further significance to this Court in *Jones* was the fact that "the circuit court, even when defense counsel did not request one, gave a limiting instruction on the evidence . . . ." *Id*. at 153. In the case sub judice, the circuit court provided that "[i]f requested, the limiting instruction will be given to the jury that [the State] can only use prior convictions to show intent."

that the door which Jones admitted to "attempting to open had been scratched and kicked, apparently with such force to dislodge the peephole our of the door and shaken items from the wall." Carter contends both that Jones's actions were far more egregious than his, as well as that two of his prior convictions which were admitted by the circuit court are distinguishable from the guilty pleas involved in *Jones*.[9] First, Carter maintains he did not plead guilty, but was convicted by a jury, in his October 20, 1992, conviction for burglary of a dwelling. For this reason, he insists that "the essential element for the *Jones* Court justifying allowance into evidence to show intent, admission of larcenous intent in a burglarious situation, was absent." Second, Carter argues that his April 6, 2005, conviction for taking a motor vehicle can be committed "without a requisite *mens rea* or intent."[10] As such, he argues that while his "guilty plea does constitute an admission to take, it does not necessarily admit to steal and carry away. Without those elements, there is insufficient similarity to the intent charged in the present indictment against [Carter]."

¶15.   In response, the State maintains that "[a]s this was an attempted burglary, it is incumbent upon the State to prove that Carter actually intended to break and enter." *See Harris v. State*, 642 So. 2d 1325, 1327 (Miss. 1994) (quoting *Edwards v. State*, 500 So. 2d 967, 969 (Miss. 1986)) (the attempt to commit a crime "consists of three elements: (1) an *intent* to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission.") (emphasis added). Moreover, "from the

---

[9]Carter concedes that four of his prior convictions, each of which he pled guilty to, involved "an element of intent to take, steal, and carry away."

[10]In support of that proposition, Carter cites *Richmond v. State*, 751 So. 2d 1038, 1047-48 (Miss. 1999).

11

outset . . . Carter's entire defense . . . is that he was drunk, lost, and looking for work, [and] that he had no intent to break and enter and no intent to steal. Evidence of Carter's intentions was accordingly *highly probative*." (Emphasis added). As to the admissibility of the two contested convictions, the State insists that ***Jones*** does not stand for the proposition that the admissible prior conviction must be accompanied by a guilty plea. Rather, "it is the prior conviction (or other evidence of a prior bad act), that must be considered, not the method by which it was attained." In total, the State argues that the circuit court did not abuse its discretion in "admitt[ing] evidence of [Carter's] criminal history to confirm his present criminal intent."

¶16.    This Court concludes that Carter's argument is without merit. Even Carter concedes that his intent in this incident was the key issue for the jury to resolve. In admitting Carter's prior felony convictions into evidence, the circuit court was careful to limit the scope of that admission as "the intent of [Carter] is greatly an issue." Admitting such evidence for the purpose of showing intent is permissible under Miss. R. Evid. 404(b). Furthermore, in its Miss. R. Evid. 403 analysis, the trial court found that because the evidence was "extremely probative of [Carter's] intent . . . that outweighs the prejudicial effect in this case." Carter attempts to obscure the issue by arguing that ***Jones*** is a jurisprudential anomaly where prior convictions, each attained through guilty pleas, were admissible because of the "perfect storm" of facts present in that particular case. Assuming arguendo that the facts of ***Jones*** were more egregious than those of the case sub judice, that case in no way limits the admissibility of prior felony convictions to those arrived at via guilty pleas. Moreover, five of Carter's six prior felony convictions involved guilty pleas.

12

¶17. Carter's intent was a necessary element for his conviction, and his prior felony convictions were admitted for limited purposes, permissible under Miss. R. Evid. 404(b), including intent. As such, this Court cannot conclude that the trial court abused its discretion in admitting Carter's prior felony convictions into evidence.

**II. Whether the circuit court erred in instructing the jury that it could consider Carter's prior felony convictions as motive when they had not been introduced for that purpose.**

¶18. According to *Armstrong v. State*, 828 So. 2d 239 (Miss. Ct. App. 2002):

[t]he lower court enjoys considerable discretion regarding the form and substance of jury instructions. *Rester v. Lott*, 566 So. 2d 1266, 1269 (Miss. 1990). The dispositive question is whether the jury was fully and correctly instructed on the principles of law involved.

If the instructions given provide correct statements of the law and are supported by the evidence, there is no prejudice to the defendant. *Johnson v. State*, 792 So. 2d 253, 258 (Miss. 2001). If the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. *Fielder v. Magnolia Beverage Co.*, 757 So. 2d 925, 929 (Miss. 1999).

*Id*. at 244.

¶19. Jury Instruction 3A provided:

[t]he Court instructs the [j]ury that evidence of other crimes of the defendant have been introduced into evidence. Such evidence of other crimes is not admissible to prove the character of the defendant in order to show that he acted in conformity with that character on January 7, 2003. However, this evidence of other crimes of the defendant is admissible for the purpose of showing the motive or intent of the defendant on January 7, 2003.

Regarding this jury instruction, Carter argued at trial that "when the State introduced those prior crimes, they only mentioned intent, not motive. And that's all we've argued is intent." The circuit judge replied that, "[t]hat's all they argued. But motive is one of the reasons that you can introduce it. A defendant's motive in committing a crime is not normally necessary,

13

but it is admissible. The motive is to obtain something of value." While Carter conceded that "it's allowed under the rules," he asserted that "[the State] never argued that they wanted it for that purpose." Carter's subsequent objection to the "motive" language in Jury Instruction 3A was overruled by the circuit court.

¶20. Carter argues that he "was not given an opportunity to be heard on this issue," because "[t]here was no mention of this evidence being admitted for the purpose of motive until the prosecution submitted its jury instructions." He further asserts that "this evidence never received a separate Mississippi Rule of Evidence 403 evaluation as to motive. For these reasons, the instruction should not have been given." *See* ***Edlin v. State***, 533 So. 2d 403, 408 (Miss. 1988) (quoting 2 Weinstein's *Evidence*, paragraph 404[08] at pp. 404-58) ("Rule 404(b) is a specialized rule of relevancy. Accordingly, as with any determination pursuant to Rule 401, counsel must be prepared to (1) identify the consequential fact to which the proffered evidence of other crimes, wrongs or acts is directed, (2) prove the other crimes, wrongs, or acts, and (3) articulate precisely the evidential hypothesis by which the consequential fact may be inferred from the proffered evidence. Evidence which passes muster up to this point must, in addition, satisfy the balancing test imposed by Rule 403 . . . .").

¶21. This Court finds that jury instruction 3A is a correct statement of the law, as evidence of Carter's prior felony convictions was not admissible to prove Carter's character in order to show that he acted in conformity therewith, but was admissible to show Carter's intent or motive. *See* Miss. R. Evid. 404(b). If one concludes that it was error for the circuit judge to give the jury instruction without engaging in a separate Miss. R. Evid. 403 evaluation as

14

to motive, it is harmless error. Prior to admission of the prior convictions for the purpose of showing intent, the State did not offer a separate argument that the evidence was also admissible to prove motive. Thus, the circuit court was not called upon to make a separate Miss. R. Evid. 403 finding. Carter argues that the State's failure to "articulate precisely the evidential hypothesis by which the consequential fact may be inferred from the proffered evidence[,]" and, thereafter, the circuit court's failure to "satisfy the balancing test imposed by Rule 403" is a basis for reversal. *Edlin*, 533 So. 2d at 408. In ***Jones v. State***, 920 So. 2d 465 (Miss. 2006), Justice Carlson, writing for the Court, stated:

> [i]n asserting that his due process rights were violated when the trial court judge failed to perform an on-the-record Rule 403 balancing test, Jones has misapprehended the nature of our rules of evidence and the discretion afforded to trial judges when applying these rules. Accordingly, while we clearly interpret the rules of evidence as requiring that all otherwise admissible evidence be 'filtered' through the balancing test set forth in Rule 403, we do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal. Though this Court certainly expects trial judges to have considered Rule 403 in making their evidentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words. . . . [W]hile a judge's on-the-record analysis is recommended as it serves to fortify the judge's position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial.

*Id*. at 476. As the trial court had already made a Rule 403 analysis, and admitted the evidence, it cannot be *fairly* argued that Carter was prejudiced by the circuit court's silence to support the additional exception granted by the very same evidentiary rule. As these instructions "fairly announce the law of the case and create no injustice," ***Armstrong***, 828 So. 2d at 244, even if one concludes it was error, under the circumstances and overwhelming

15

evidence of guilt, it was harmless. Therefore, this Court concludes that no reversible error is present.

**CONCLUSION**

¶22. We affirm the final judgment and sentence of the Circuit Court of Oktibbeha County which found Carter guilty of attempted burglary of a dwelling and sentenced him to twenty-five (25) years in the custody of the MDOC pursuant to the habitual offender statute, Miss. Code Ann. Section 99-19-81 (Rev. 2006).

¶23. **CONVICTION OF ATTEMPTED BURGLARY OF A DWELLING AND SENTENCE OF TWENTY FIVE YEARS (25), AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**