BARNES, J., for the Court.
 

 ¶ 1. Scotty B. Lyles appeals the judgment of the Oktibbeha County Circuit Court which convicted him of violating Mississippi Code Annotated section 97-19-55 (Rev.2000) for obtaining merchandise of a total value of $100 or more under false pretenses by knowingly and intentionally writing a bad check. After the indictment was amended to reflect Lyles’s status as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev.2000), he was sentenced to serve a term of life imprisonment in the Mississippi Department of Corrections without eligibility for parole or probation. Finding no reversible error, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶2. On December 23, 2005, Lyles purchased $105.79 of liquor from the Stark-ville Discount Liquor Store. To pay for his purchase, he presented a check dated December 23, 2008, to the store clerk, Gerald Richardson. Prior to accepting the check, Richardson required Lyles to write on the check his telephone number, driver’s license number, and his social security number. Richardson then took the cheek and printed “Starkville Discount Liquor Store” on the payee line at Lyles’s request. Lyles filled in the numerical amount of the purchase, but he did not fill in the written amount in the space below. Lyles also signed his name on the memo line rather than on the drawer line. Richardson accepted the check and gave Lyles the liquor. The check presented by Lyles was later returned “Account Closed.” According to store policy, Richardson was required to pay for the merchandise out of his own pocket after the check was returned, and the check was later forwarded to the district attorney’s bad check unit. Lyles was later found guilty at a jury trial. At the sentencing hearing to determine Lyles’s status as habitual offender, the circuit court found beyond a reasonable doubt that Lyles was a habitual offender under section 99-19-83 and, accordingly, sentenced him to life imprisonment without eligibility for parole or probation in the custody of the Mississippi Department of Corrections. Lyles filed a motion for a judgment notwithstanding the verdict and/or a new trial and a motion to reconsider the sentence, both of which were denied by the circuit court.
 

 ¶ 3. On appeal, Lyles raises five issues: (1) that the evidence was insufficient to find him guilty of false pretense, (2) that he was denied a fair trial by the introduction into evidence of over $7,000 in bad checks not charged in the indictment, (3) that the indictment was fatally defective for failing to allege the property was procured with intent to cheat, (4) that life imprisonment without eligibility for parole is disproportionate to the crime of writing a check on a closed account, and (5) that the circuit court erred in failing to instruct the jury on the elements of the indicted charge.
 

 DISCUSSION
 

 I. Whether the evidence was sufficient to find Lyles guilty of fraudulent intent.
 

 ¶ 4. The standard of review for the legal sufficiency of evidence is well settled:
 

 We must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in
 
 *535
 
 the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
 

 Thorson v. State,
 
 895 So.2d 85, 98(¶ 17) (Miss.2004) (quoting
 
 Sheffield v. State,
 
 749 So.2d 128, 125(¶ 9) (Miss.1999)).
 

 ¶ 5. Lyles was charged with knowingly and intentionally writing a bad check under section 97-19-55 which states that:
 

 It shall be unlawful for any person with fraudulent intent:
 

 (a) To make, draw, issue, utter or deliver any check, draft or order for the payment of money drawn on any bank, corporation, firm, or person, knowing at the time of making, drawing, issuing, uttering or delivering said check, draft or order that the maker or drawer has not sufficient funds in or on deposit with such bank, corporation, firm, or person for the payment of such check, draft or order in full, and all other checks, drafts or orders upon such funds then outstanding;
 

 (b) To close an account without leaving sufficient funds to cover all outstanding checks written on such account.
 

 ¶ 6. Lyles contends that his conviction should be reversed because he did not violate the statute due to his lack of knowledge that his funds were insufficient to cover the check. He also contends that his conviction should be reversed because the check that he wrote was dated December 23, 2008, thereby making the check a future obligation to pay on the same day three years after he obtained the merchandise.
 

 ¶ 7. Regarding Lyles’s first contention, the prosecution presented the testimony of Sammy Slaughter, an employee of Am-South Bank in Starkville, Mississippi. Slaughter’s testimony securely established that from the beginning of Lyles’s account, Lyles received regular monthly account statements regarding his account balance and transactions. Slaughter further testified that AmSouth closed Lyles’s account on September 9, 2005, due to over $7,000 of returned checks, and that a few days after this closure, Lyles would have received an account closure notification in the mail thereby indicating that Lyles did, in fact, know of his negative balance and account closure prior to writing the check at issue.
 

 ¶ 8. The Mississippi Supreme Court stated in
 
 Brown v. State,
 
 829 So.2d 93, 103(¶ 22) (Miss.2002) (citation omitted) that “[i]f there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.” Moreover, the supreme court recognized in
 
 Moore v. State,
 
 996 So.2d 756, 760(¶ 12) (Miss.2008) that “[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Further, the Court accepts “as true all of the evidence that is favorable to the State, including all reasonable inferences that
 
 *536
 
 may be drawn therefrom, and ... disregard[s] evidence favorable to [the defendant].”
 
 Id.
 
 at 760-61 (¶ 12) (quoting
 
 Anderson v. State,
 
 904 So.2d 973, 977 (¶ 8) (Miss.2004)).
 

 ¶ 9. In light of
 
 Brown
 
 and
 
 Moore,
 
 it is apparent that the jurors at Lyles’s trial accepted Slaughter’s testimony as true and properly inferred that Lyles did have knowledge that his account was closed when he wrote the bad check to the liquor store. We find that Slaughter’s uncontro-verted testimony was legally sufficient to establish that Lyles knew his account had a negative balance and had been closed for almost four months prior to his writing the check to Starkville Discount Liquor Store.
 

 ¶ 10. As to his second contention regarding his alleged future obligation to pay, Lyles relies on
 
 Henderson v. State,
 
 534 So.2d 554 (Miss.1988) for the proposition that because his check was dated for December 23, 2008, a date three years in the future, the check was issued as a future obligation rather than for present value. This proposition is insufficient to reverse Lyles’s conviction as
 
 Henderson
 
 is easily distinguishable from the case at bar.
 

 ¶ 11. In
 
 Henderson,
 
 the defendant was convicted under section 97-19-55 of the Mississippi Code Annotated for writing a bad check. The court reversed her conviction on the ground that the statute first requires that when the maker writes the check, “she has to
 
 know at the time
 
 that she ... ‘has not sufficient funds in or on deposit with such bank[.]’ ”
 
 Henderson,
 
 534 So.2d at 556. (emphasis added). The court reasoned that even though the check was “written on and dated for October 4, by agreement it was not to be presented for payment until October 28.”
 
 Id.
 
 Further, the court explained that “[h]ad the parties contemplated cashing the check on October 4, there would not have been insufficient funds. At most, however, Mrs. Henderson obligated herself that when the check would be presented on October 28, there would be sufficient funds on deposit on that date.”
 
 Id.
 

 [1]
 

 Accordingly, the court concluded that it was “obvious” that Henderson did not violate section 97-19-55 because the check was written with an express agreement that it would not be cashed until October 28; thus, it represented “a future obligation as to payment of the check not contemplated by the statute.”
 
 Id.
 

 ¶ 12. By contrast, the questions raised in
 
 Henderson
 
 are completely absent from the case at hand. In
 
 Henderson,
 
 the check was exchanged for an option contract, which may not fall under the “money, services, or any article of value” portion of the statute. Here, Lyles wrote the bad check in exchange for liquor, which is clearly an article of value as contemplated by the statute. What is more, there was never any express or implied agreement between Lyles and the store clerk or owner as to the date of the check, when it was to be cashed, or when Lyles’s obligation to pay would come to fruition. Not only did Lyles lack sufficient funds to cover the check, but the check was also written on an account that was closed more than three months prior to issuance. Logically, it would be impossible for the check to
 
 ever
 
 be honored since the account was closed and had been closed for quite some time before the check was written. Moreover, there is no evidence to show that the post-dating of the check from a closed account is anything other than fraud by Lyles. For these reasons, we conclude the evidence was legally sufficient to show
 
 *537
 
 Lyles’s knowledge of his closed account, as well as an exchange for present value rather than for a future obligation. Accordingly, Lyles was properly found guilty of fraudulent intent as contemplated by section 97-19-55 of the Mississippi Code Annotated. This issue is without merit.
 

 II. Whether the introduction of Lyles’s bank records into evidence was necessary to show knowledge and intent, and the probative value was not substantially outweighed by the possibility of unfair prejudice.
 

 ¶ 13. “The standard of review regarding the admission or exclusion of evidence is abuse of discretion.”
 
 Mason v. State,
 
 971 So.2d 618, 620(¶ 11) (Miss.Ct.App.2007) (citation omitted). “Absent an abuse of that discretion, the trial court’s decision will not be disturbed on appeal.”
 
 Id.
 

 ¶ 14. For the reasons set forth below, we conclude that the trial court did not abuse its discretion by allowing Lyles’s bank records to be admitted into evidence pursuant to Rules 403 and 404(b) of the Mississippi Rules of Evidence. Lyles relies on
 
 Elmore v. State,
 
 510 So.2d 127 (Miss.1987) for the proposition that evidence of unrelated crimes should not be allowed into evidence against the defendant at trial. In
 
 Elmore,
 
 the defendant was charged with sexual crimes against his stepdaughter, V.E.
 
 Id.
 
 at 128. The trial court allowed the prosecution to introduce testimony that indicated that Elmore had committed crimes against other members of the family (aside from V.E.) that were sexual in nature.
 
 Id.
 
 at 129. Because these crimes did not fall under any of the exceptions to the rule, the supreme court reversed the defendant’s conviction on the ground that the jury was improperly diverted from the issue of whether the defendant committed the one instance of sexual battery with which he was charged.
 
 Id.
 
 at 131.
 

 ¶ 15. While Rule 404(b) of the Mississippi Rules of Evidence states that other crimes are inadmissible to prove the “character of a person in order to show that he acted in conformity therewith,” the rule does allow the introduction of past crimes for the purpose of “proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” The State aptly relies on
 
 Riley v. State,
 
 254 Miss. 86, 180 So.2d 321 (1965), for the proposition that the evidence was properly admitted to show knowledge and intent rather than conformity with prior bad acts. The defendant in
 
 Riley
 
 had been caught and prosecuted under Mississippi’s “Peeping Tom” law.
 
 Id.
 
 at 89, 180 So.2d at 322. The defendant contended that he was unaware of his actions and offered evidence in support of his contentions.
 
 Id.
 
 at 92, 180 So.2d at 324. To rebut this claim, the prosecution introduced other instances of the defendant’s “peeping.”
 
 Id.
 
 at 90, 180 So.2d at 323. The court explained that:
 

 Evidence of the conduct of the accused on other occasions, though disconnected from the offense on trial, is frequently admitted in cases of conspiracy, uttering forged instruments and counterfeit coin, and receiving stolen goods, — not, however, for the purpose of inducing the jury to believe the accused [is] guilty of the crime for which he is on trial, because he had committed another similar crime, but for the purpose of excluding him from setting up the defense that he did the act innocently and without knowledge of [his] guilt.
 

 Id.
 
 at 96, 180 So.2d at 326 (citing
 
 Raines v. State,
 
 81 Miss. 489, 497, 33 So. 19, 20-21 (1902)). Additionally, in
 
 Carter v. State,
 
 953 So.2d 224, 229(¶ 11) (Miss.2007), the
 
 *538
 
 Mississippi Supreme Court stated that “[i]n admitting evidence of [the defendant’s] prior felony convictions for the limited purposes of showing intent, the circuit court determined that ‘in this particular case, ... the
 
 intent
 
 of [the defendant] is greatly an issue.’ ”
 
 Id.
 
 Moreover, “the circuit court analyzed the evidence under [Mississippi Rule of Evidence] 403 and found that it was ‘extremely probative of [the defendant’s] intent, a necessary element, and that outweighs the prejudicial effect in this case.’ ”
 
 Id.
 

 ¶ 16. According to
 
 Riley
 
 and
 
 Carter,
 
 it is clear that as long as the trial judge engages in a Rule 403 balancing test regarding the evidence to be admitted, such evidence of prior bad acts is admissible to show knowledge and intent if the probative value outweighs the potential prejudicial effect of the evidence. A close reading of the trial transcript indicates that the circuit judge did, in fact, engage in a Rule 403 balancing test and properly admitted the bank statements for the purpose of showing knowledge of the account’s closure and Lyles’s intent to commit the crime of false pretenses, both of which are elements under section 97-19-55. Slaughter testified that these bank statements would have been mailed to Lyles according to bank policy, thereby making him aware that there was no money in his account and that the account was subsequently closed due to lack of funds. Specifically, the statements showed that from April to July 2005, small deposits and withdrawals were being made on the account; then, during the July billing cycle, Lyles began to make large withdrawals with no corresponding deposits resulting in a negative balance of more than $1,000. By the time the account was closed in September, the deficit on Lyles’s account was more than $7,000.
 
 [2]
 
 By introducing these pertinent bank statements, the State showed that this was not an instance of innocent mathematical errors that overextended Lyles’s account, but rather that Lyles knew that there were insufficient funds in his account to pay any additional checks.
 

 ¶ 17. As a consequence, the admittance of the bank statements properly fell under Rule 404(b) of the Mississippi Rules of Evidence exceptions of knowledge and intent. Additionally, under Rule 403, the evidence was not overly prejudicial since the bank record did not include any information regarding other indictments; it was accompanied by a limiting instruction, and the prosecutor did not emphasize any other bounced checks. We conclude that the circuit court did not abuse its discretion in admitting the bank records since the bank records had little prejudicial effect and were admitted to prove knowledge and intent. This issue is without merit.
 

 III. Whether the indictment was proper in its wording and not fatally defective.
 

 ¶ 18. The legal sufficiency of an indictment is an issue of law; accordingly, our review is de novo.
 
 Tran v. State,
 
 962 So.2d 1237, 1240(¶ 12) (Miss.2007). In
 
 Gilmer v. State,
 
 955 So.2d 829, 836-37(¶24) (Miss.2007) (citations omitted), the Mississippi Supreme Court explained that:
 

 An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy
 
 *539
 
 in the event of a future prosecution for the same offense.
 

 In sum, “[a]n indictment must specifically reference the elements of a charged offense so that it informs a defendant of the charges against him and the possible defenses to the charged offense.”
 
 Clark v. State,
 
 923 So.2d 256, 257(¶ 3) (Miss.Ct.App.2006) (citation omitted). “The ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense.”
 
 Fuqua v. State,
 
 938 So.2d 277, 281(¶ 11) (Miss.Ct.App.2006) (quoting
 
 Medina v. State,
 
 688 So.2d 727, 730 (Miss.1996)).
 

 ¶ 19. Lyles contends that the indictment with which he was charged is fatally defective for its failure to use the words “intent to cheat” or “intent to defraud.” The statute under which Lyles was indicted, section 97-19-55, makes it “unlawful for any person with fraudulent intent ... [t]o make, draw, issue, utter or deliver any check ... knowing at the time ... that the maker or drawer has not sufficient funds in or on deposit ... for the payment of such check ... in full, and all other checks ... upon such funds then outstanding!.]” The indictment charged that Lyles “unlawfully, wilfully and feloniously” obtained merchandise by presenting a check, knowing at the time of issue that he did not have an account at the bank. The indictment also charged that Lyles did, “by virtue of said false and fraudulent representations, cheat and defraud” Richardson, the bank, and the liquor store.
 

 ¶ 20. Lyles relies on
 
 McBride v. State,
 
 141 Miss. 186, 104 So. 454 (1925) for the proposition that “intent to defraud” must be specifically included in the indictment. The supreme court in
 
 McBride
 
 stated that “[t]he statute does not make it a crime to draw bad checks. The crime therein defined is the drawing, uttering, or delivering of bad checks, orders, or drafts with the intent to defraud.”
 
 Id.
 
 at 190-91, 104 So. at 455. The court further stated that “[i]t is true that the indictment charged that the drawing of the check by appellant was done unlawfully and feloniously. But that is not sufficient.”
 
 Id.
 
 The court concluded that it was the purpose of the Legislature to “prevent the drawing, uttering, or delivering of
 
 fraudulent
 
 checks and drafts!;] [thus,] the indictment was fatally defective in that it did not charge that the check in question was drawn by [the] appellant with the
 
 intent to defraud.” Id.
 
 (emphasis added).
 

 ¶ 21. Contrary to Lyles’s position, the indictment does sufficiently allege an intent to cheat or defraud. While the word “intent” is not specifically used in Lyles’s indictment, it does contain the term “wil-fully.” The indictment in
 
 McBride
 
 only included the words “unlawfully and felo-niously” without mention of willfulness, intent, or fraudulent representation. Black’s Law Dictionary 1630 (8th ed.2004), defines willful as “[v]oluntary and
 
 intentional,
 
 but not necessarily malicious.” (Emphasis added). In
 
 Moore v. State,
 
 676 So.2d 244, 246 (Miss.1996), the terms “willfully,” “knowingly,” and “intentionally” were considered by our own supreme court to be interchangable. “Moreover, “wilful’ means nothing more than doing an act intentionally.”
 
 Id.
 
 (citation omitted). “The charge that one wilfully did an act is to charge he intended doing such act.”
 
 Dorroh v. State,
 
 229 Miss. 315, 321, 90 So.2d 653, 655 (1956). The indictment also charged that Lyles, through “false and fraudulent representations, cheat[ed] and defraud[ed]” the victims. “Fraudulent representation,” also termed “misrepresentation,” is defined as an “act of making a false or misleading assertion about something, usually with the intent to deceive” and with the intent that the party will “detrimental
 
 *540
 
 ly rely on it.” Black’s Law Dictionary 1022 (8th ed.2004).
 

 ¶22. The purpose of the indictment was to afford Lyles “notice and a reasonable description of the charges” in order to help him prepare a defense.
 
 Spicer v. State,
 
 921 So.2d 292, 319(¶ 58) (Miss.2006) (citing
 
 Williams v. State,
 
 445 So.2d 798, 804 (Miss.1984)). “Therefore, an indictment is only required to have a clear and concise statement of the elements of the crime the defendant is charged with.”
 
 Id.
 
 Although the indictment did not expressly contain the phrase “intent to defraud,” we find that the language was sufficient to furnish Lyles notice of the charge against him as it charged willfulness, “fraudulent representations,” and the “defrauding]” of Richardson. Further, Lyles has not identified any prejudice in the presentation
 
 of his
 
 defense resulting from the wording in the indictment. Thus, this assignment of error is without merit.
 

 IV. Whether life imprisonment is constitutionally disproportionate for Lyles’s conviction as a habitual offender.
 

 ¶ 23. “It is well settled in this State that the imposition of [a] sentence in a criminal proceeding is within the sole discretion of the trial judge, and that [the appellate court] will not reverse a sentence where it is within the limits prescribed by statute.”
 
 Corley v. State,
 
 536 So.2d 1314, 1319 (Miss.1988) (citing
 
 Johnson v. State,
 
 461 So.2d 1288, 1292 (Miss.1984)). For the reasons set forth below, we find no reversible error in the sentencing of Lyles by the circuit court; therefore, we affirm Lyles’s sentence.
 

 ¶ 24. Lyles was sentenced to life imprisonment without the eligibility for parole or probation under Mississippi’s habitual offender statute after being convicted of issuing a check with fraudulent intent. He argues that the crime for which he was convicted, writing a bad check for a little over $100, is disproportionate to the sentence he received. The habitual offender law, Mississippi Code Annotated section 99-19-83, states that:
 

 Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
 

 After Lyles was found guilty, the circuit court judge held a sentencing and proportionality hearing in which Lyles was sentenced to life imprisonment without eligibility for parole or probation. The circuit court based Lyles’s sentence on his prior criminal history, which consisted of thirteen felonies, spanning from theft to burglary to robbery. The circuit court judge commented:
 

 This gentleman [Lyles] has the most felony convictions out of any one that I have dealt with, as either a trial lawyer or as a prosecutor or as a trial judge since I’ve been back home. And during my time on the Supreme Court when I was a law clerk, I don’t remember any one having that many felonies.
 

 The majority of the offenses took place in Cook County, Illinois, where Lyles was convicted, at least once, of robbery. It is well settled that robbery is a crime of violence for the purposes of Mississippi’s
 
 *541
 
 habitual-offender statute.
 
 Magee v. State,
 
 542 So.2d 228, 236 (Miss.1989).
 

 ¶ 25. In
 
 McGruder v. Puckett,
 
 954 F.2d 313, 314 (5th Cir.1992), a federal habeas appeal, the defendant was charged with burglary of an automobile, specifically for stealing twenty cases of beer from a delivery truck. He was sentenced under the Mississippi habitual-offender law to life in prison without the hope of parole. The defendant appealed to the Mississippi Supreme Court which examined his five prior felony charges and found that the sentence was not unconstitutionally disproportionate.
 
 Id.
 
 The United States Court of Appeals for the Fifth Circuit later denied McGruder’s petition for habeas corpus, finding his five prior felonies to be sufficient grounds to sentence him under the habitual-offender statute.
 
 Id.
 
 at 316-17. In this case, we have not five, but thirteen, prior felony convictions.
 

 ¶ 26. Under the habitual-offender statute, the imposed sentence “refleet[s] the seriousness of [the] most recent offense, not as it stands alone, but in the light of [a defendant’s] prior offenses.”
 
 Id.
 
 at 316. At the sentencing hearing, the circuit court judge acknowledged that in light of the present offense, this would seem to be a “very hard sentence.” However, the judge also observed that:
 

 [W]hen the Court considers Mr. Lyles’s life work and more importantly, his life’s criminal work, the Court finds that this sentence is not disproportionate because of Mr. Lyles’s apparently seeming inability to conform his behavior to the requirements that ... society expects of him.
 

 We agree. In
 
 Rummel v. Estelle,
 
 445 U.S. 263, 265-66, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the defendant, who had previously been convicted and sentenced to prison for two separate felonies, was convicted of a third felony, obtaining $120.75 by false pretenses, and received a mandatory life sentence pursuant to Texas’s recidivist statute. The two prior felonies were also property theft related — “a fraudulent use of a credit card to obtain [eighty dollars’] worth of goods or services, and passing a forged check in the amount of $28.36.”
 
 Id.
 
 The United States Supreme Court found that Rummel’s life sentence was not disproportionate, stating that the purpose of the habitual-offender statutes is to deal “in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.”
 
 Id.
 
 at 276, 100 S.Ct. 1133.
 

 ¶ 27. Thus, as Lyles has been convicted of thirteen prior felonies, at least one of which was violent, we conclude that Lyles’s sentence of life imprisonment without eligibility for parole or probation is not unconstitutionally disproportionate to the offense for which he was convicted as a habitual offender. This issue is without merit.
 

 V. Whether the instruction given to the jury was correct and contained all elements of the indicted charge.
 

 ¶ 28. The Mississippi Supreme Court has stated that “[instructing the jury on every element of the charged crime is so basic to our system of justice that it should be enforced by reversal in every case where inadequate instructions are given, regardless of a failure to object or making a different objection at trial.”
 
 Shaffer v. State,
 
 740 So.2d 273, 282(¶ 31) (Miss.1998). ‘“Just as the State must prove each element of the offense, the jury must be correctly and fully instructed regarding each element of the offense charged.’ Failure to submit to the jury the essential elements of the crime is ‘fundamental’ error.”
 
 Id.
 
 (internal quotations
 
 *542
 
 omitted). Accordingly, “[a] conviction is not valid where the prosecution does not prove each element of the charged offense beyond a reasonable doubt.... Where the jury is not even instructed on one of the vital elements of the offense, the conviction must not survive the scrutiny of [the appellate court].”
 
 Id.
 
 at (¶ 32).
 

 ¶ 29. Lyles contends that the language in the jury instruction was inconsistent with the language in the indictment and that the failure of the State to submit an element instruction consistent with the language in the indictment is reversible error. As demonstrated below, we conclude that the jury instruction presented to the jury properly contained all the elements of the indicted charge.
 

 ¶ 30. In
 
 Nix v. State,
 
 8 So.3d 141 (¶ 11) (Miss.2009), the defendant argued that his conviction should be overturned because the jury instruction contained language that differed from the language of the indictment. The supreme court rejected that contention, concluding that “although jury instructions generally should track the language of indictments, an instruction is not necessarily fatally defective for failure to do so, so long as the instruction ‘accurately follows the requisite elements of the crime.’ ”
 
 Id.
 
 at (¶ 16) (quoting
 
 Duplantis v. State,
 
 708 So.2d 1327, 1344(¶ 76) (Miss.1998)). “A jury instruction’s variance from the language of the indictment ‘must be material to accurately categorize an instruction as error.’ ”
 
 Id.
 
 (citing
 
 Williams,
 
 445 So.2d at 806).
 

 ¶ 31. In
 
 Williams,
 
 the indictment charged the defendant with taking a money box, a billfold, and some money.
 
 Id.
 
 at 806. The instruction, however, directed the jury to determine whether the defendant took the money box, billfold, or “anything of value.”
 
 Id.
 
 The court found that the jury instruction, although a variance from the indictment, did not constitute error.
 
 Id.
 
 at 807. In support of its finding, the court noted that the instruction did not: (1) “materially vary from the charge alleged in the indictment[,]” (2) accuse the defendant of “a crime separate and distinct from that stated in the indietment[,]” or (3) “refer to alleged facts of which [the defendant] had no notice.”
 
 Id.
 

 ¶ 32. The jury instruction, S-2, charged the jury to find Lyles guilty if it believed, beyond a reasonable doubt, that Lyles “did with fraudulent intent unlawfully, willfully and feloniously” issue a check knowing at the time that he did not have sufficient funds on deposit with AmSouth Bank for payment of the check. The difference at issue between the jury instruction and the indictment is that the words, “did not have sufficient funds” replaced the indictment wording “did not have an account in said bank.” However, both phrases are indicative of essentially the same meaning in the context of this case. While Lyles originally had an account at AmSouth Bank, it was closed due to insufficient funds prior to his writing the check at issue. Accordingly, Lyles had neither an account nor sufficient funds at the time he issued the check at the liquor store.
 

 ¶ 33. It is apparent that, even though the language of the instruction varied from that of the indictment, it was not a material variance under the facts of this case as Lyles did not have an account at AmSouth Bank as it had been closed due to insufficient funds. Further, the requirements for fraudulent intent are clearly within the jury instruction, and the jury was properly instructed on what it was to decide. Therefore, we find that the jury was sufficiently instructed to be able to convict Lyles under section 97-19-55. This issue is without merit.
 

 CONCLUSION
 

 ¶ 34. In light of the foregoing, we conclude that Lyles was properly convicted
 
 *543
 
 under section 97-19-55 as he intentionally issued a check for present value with knowledge that his account was closed and that he was properly sentenced under the Mississippi habitual-offender law. Accordingly, we affirm.
 

 ¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION OF OBTAINING MERCHANDISE VALUED AT $100 OR MORE UNDER FALSE PRETENSES AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIB-BEHA COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
 

 [1]
 

 . The court also expressed doubt as to whether "obtaining an option to purchase realty with one[-]year right-of-exercise constituted 'money, services or any article of value,' [as] contemplated by the statute.”
 
 Henderson,
 
 534 So.2d at 556.
 

 [2]
 

 . The account statements showed the returned checks that resulted in the $7,000 deficit, but there was no indication that any criminal prosecution resulted from those returned checks.